122 N.J. Super. 319 (1973)
300 A.2d 346
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RAYMOND BRAEUNIG, CHARLES MARTIN, RUSSELL MILLER, JOSEPH RICHARDS, MARIE FLYNN AND EVELYN LAKES, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 30, 1972.
Decided February 5, 1973.
*323 Before Judges FRITZ, LYNCH and HANDLER.
Mr. Patrick McGahn argued the cause for appellants Braeunig, Martin, Miller, Flynn and Lakes (Messrs. McGahn & Friss, attorneys).
Mr. Sidney M. Goodelman argued the cause for appellant Richards.
*324 Mr. John A. Brogan, Deputy Attorney General argued the cause for respondent (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney).
The opinion of the court was delivered by HANDLER, J.S.C., Temporarily Assigned.
Defendants were indicted for conspiracy to violate the gambling laws and for substantive gambling offenses. They were found guilty by a jury on all counts after a ten-day trial and were sentenced to various prison terms, fines and payment of costs. This appeal ensued.
The prosecution originated with an investigation into bookmaking activities in Cape May and Atlantic Counties in March 1969. During the course of that investigation a member of the New Jersey State Police, acting as an undercover agent, observed and overheard Peter Liberino place a telephone call to a particular telephone number from a public telephone located in his bar in Cape May and relate bets which had previously been given to him orally by other persons. Such activity by Liberino was observed several times between March 4, 1969 and May 9, 1969. The telephone number he called was traced to a particular subscriber. Pursuant to the New Jersey Wiretapping and Electronic Surveillance Control Act, N.J.S.A. 2A:156A-1 et seq. the Attorney General authorized an application for an order to intercept communications from this telephone facility and such an order was entered on May 15, 1969. Electronic surveillance over this facility revealed gambling activities involving another telephone. There followed a series of similar court-authorized wiretaps over this and other telephones. The evidence accumulated from these successive electronic surveillances was gathered into applications for search and arrest warrants, the execution of which eventually led to the arrests of the defendants and their indictment on September 30, 1970.

*325 I
Defendants assert initially that the New Jersey Wiretapping and Electronic Surveillance Control Act is unconstitutional. It has been determined that the act is constitutional. State v. Dye, 60 N.J. 518 (1972).

II
Defendants argue that the New Jersey Wiretapping and Electronic Surveillance Control Act in varying ways was "illegally applied." It is contended that the periods for wiretapping authorized in the respective orders were unnecessarily long. Each of the orders provided that "said interception shall terminate no later than 30 days from the beginning of interception." The maximum 30-day duration for the successive electronic surveillances, to be otherwise terminated as soon as practicable, in the context of the supporting applications reflect reasonable judicial determinations. Cf. State v. Christy, 112 N.J. Super. 48 (Cty. Ct. 1970). There was, moreover, no overbroad discretion vested in the executing officers with respect to the termination of the interceptions over the subject facilities. See State v. Dye, supra, 60 N.J. at 534-538.
It is also contended that the respective orders failed to describe the type communications or the identity of the persons whose communications were to be intercepted as required under N.J.S.A. 2A:156A-12(b) and (d). The orders did refer to the type of communications to be intercepted, namely, those "evidentiary of such offenses" i.e., those "relating to the offenses of bookmaking (N.J.S.A. 2A:112-3) and conspiracy (N.J.S.A. 2A:98-1 and 2) * * *." The persons involved, although unknown, were adequately identified in terms of their anticipated involvement in the suspected gambling activities and their use of the particular telephone facilities to perpetrate these offenses. Cf. State v. Sidoti, 116 N.J. Super. 70 (Cty. Ct. 1971), *326 rev'd and remanded on other grounds 120 N.J. Super. 208 (App. Div. 1972).
Defendants assert further that the orders permitting the interception of communications over certain of the telephones were invalid because there was a failure to satisfy N.J.S.A. 2A:156A-10(c). This provision requires a determination by the court "on the basis of facts submitted by the applicant that there is * * * probable cause for belief that * * * [n]ormal investigative procedures with respect to such offenses have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ."
The order with respect to the Del Grande facility which was entered on June 4, 1969 (and renewed on July 3, 1969) was based upon an application and affidavit which set forth the actual or expected results of other investigative procedures. These indicated spot surveillances were unproductive and other measures, such as sustained surveillances, toll call analysis or personal interviews, were unlikely to succeed in revealing the substance of gambling communications or might endanger the investigator. A successive application and order included the Del Grande information and contained comparable determinations. Another order involving the Braeunig telephone was entered on July 11, 1969 by the same judge. The affidavit with respect to this tap contained selective results of the earlier interceptions and disclosed the utilization of the Braeunig telephone as an instrumentality in the gambling enterprise. While this affidavit did not explicitly relate that other investigative techniques had actually been utilized, it did reflect the conclusion that "[i]n order to more fully identify individuals associated with Ray and to determine their involvement in his bookmaking activities it will be necessary to intercept the telephone conversations of Ray." Thus there was a basis for the court's critical determination that "normal investigative procedures * * * reasonably appear to be unlikely to succeed * * *." The statement in the order that such procedures had been *327 tried was not literally accurate but, against the backdrop of this investigation, it appears to be an inadvertent omission and is not a fatal defect. We conclude that defendants' contentions on this point lack merit. See State v. Dye, supra, 60 N.J. at 526.
Defendants also intimate without precise argument that certain telephones were the facilities of a husband and wife and therefore there was required to be shown "a special need" for their tap under N.J.S.A. 2A:156A-11. In such a situation applying officers should be mindful of this requirement. But the issue has not been crystallized herein and the record is factually insufficient to support this contention. Cf. State v. Sidoti, supra, 120 N.J. Super. at 213.

III
Defendants assert that the various wiretap orders were executed unlawfully in that there was a failure to comply with the directives set forth therein, as required by N.J.S.A. 2A:156A-12(f), viz:
* * * No order entered under this section shall authorize the interception of any wire or oral communication for a period of time in excess of that necessary under the circumstances. Every order entered under this section shall require that such interception begin and terminate as soon as practicable and be conducted in such a manner as to minimize or eliminate the interception of such communications not otherwise subject to interception under this act.
The State's rejoinder is that there was no duty on the part of executing officers to desist from the interception of apparently innocuous communications; that this statutory directive was satisfied since the State limited "its surveillance to the daylight hours, the normal hours for gambling activity and that there is no showing that the wiretaps were conducted in bad faith." Defendants point out, however, that they were denied effective discovery since the trial court refused to make all of the tapes and the logs or summaries thereof available to them and thus "precluded them from *328 determining the real extent of the invasion of privacy * * * and the extent of the violation of the statute." Their complaints were also continued during trial.
The New Jersey Wiretapping and Electronic Surveillance Control Act contemplates reasonable discovery. N.J.S.A. 2A:156A-16 provides for the timely service of an "inventory" upon persons named in a wiretap order as well as actual parties to intercepted communications. It states further that "[t]he court, upon the filing of a motion, may in its discretion make available to such person or his attorney for inspection such portions of the intercepted communications, applications and orders as the court determines to be in the interest of justice." Elsewhere it is provided that there may be an exchange of intercepted communications between law enforcement officers for the proper performance of official duties. N.J.S.A. 2A:156A-17, subd. a. The contents of intercepted communications may also be disclosed in the course of any judicial criminal proceeding. N.J.S.A. 2A-156A-17, subd. b. In addition to disclosure and use for these specific purposes, "[t]he contents of any intercepted wire or oral communication, or evidence derived therefrom, may otherwise be disclosed or used only upon a showing of good cause before a court of competent jurisdiction." N.J.S.A. 2A:156A-17, subd. c. Further "[t]he court, upon the filing of [a] motion [to suppress] by [an] aggrieved person, may in his discretion make available to the aggrieved person or his counsel for inspection such portions of the intercepted communication, or evidence derived therefrom, as the court determines to be in the interests of justice." N.J.S.A. 2A:156A-21.
The historical antecedents to the New Jersey wiretapping statute are helpful in gleaning legislative intent. See State v. Christy, supra, 112 N.J. Super. at 53; State v. Sidoti, supra, 116 N.J. Super. at 76-77. These sources underscore the thesis that discovery involving disclosure of intercepted communications is not contra-indicated. The state model act contains provisions relating to discovery comparable *329 to those in the New Jersey act. Blakey and Hancock, "A Proposed Electronic Surveillance Control Act," 43 Notre Dame Lawyer 657, 677-680 (1968). The controlling federal legislation, the Omnibus Crime Control and Safe Street Act of 1968, also provides for the disclosure of intercepted communications. 18 U.S.C. § 2518(9), (10). American Bar Association projects have treated the subjects of electronic surveillance and discovery before trial. They recognize the propriety of pretrial discovery involving the disclosure of the contents of court-authorized wiretaps and derivative evidence, both for purposes of trial preparation as well as for the exploration of collateral issues such as whether evidence might be suppressed. A.B.A., Project on Minimum Standards for Criminal Justice, "Electronic Surveillance," §§ 515-516 at 23-24, 161-163 (1971); A.B.A., Project on Minimum Standards for Criminal Justice, "Discovery and Procedure Before Trial," § 2.1(b) (iii) at 53, 71 (1970). Thus, discovery relating to the contents of intercepted communications and derivative evidence in a pretrial setting is recognized under the New Jersey wiretapping law, and the touchstones for according such discovery are the "interests of justice" and "good cause." These criteria encompass the recognized objectives of liberal pretrial discovery which have become axiomatic in the current administration of criminal justice. R. 3:13-3; Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957); State v. Cook, 43 N.J. 560 (1965); see State v. Montague, 55 N.J. 387, 394-395 (1970)
It does not follow that discovery entailing the disclosure of the contents of intercepted communications should be uncritical or promiscuous or without court superintendence. The State, for example, has argued that defendants' request to have access to all of the tapes and logs would jeopardize the privacy of third persons. Such an unsubstantiated and blanket protest should not, however, block or *330 forestall all discovery. An objection may have merit but specific grounds therefor should be demonstrated by the State and should, if appropriate, be the subject of a protective order. R. 3:13-3 (g). Thus, if it is demonstrated to the court that there are recorded conversations of innocent persons or persons wholly unconnected with the suspected criminal activities which have minimal evidential worth and their revelation might be unduly embarrassing or humiliating, these may be withheld from disclosure. Similarly, there may be conversations the disclosure of which may create a risk of special danger or harm to persons. There may be conversations concerning other criminal activities which may be the subject of pending investigations. Some conversations might be privileged or otherwise confidential. Certain communications might tend to disclose the identity of informants or the nature or techniques of police investigative procedures. Such examples can be multiplied. But the withholding of such conversations should be counterbalanced by the ultimate desideratum of full discovery for all legitimate pretrial and trial purposes.
Defendants herein were not accorded complete discovery, nor did the State demonstrate concrete grounds for the withholding of the contents of any intercepted communications from full disclosure. Defendants were furnished in advance of trial with only the daily tapes and corresponding logs, which included the particular conversations selected by the State for presentation at trial. These selected conversations had been duplicated on a so-called composite tape for trial purposes, and the State also furnished defendants with what amounted to an index of the composite tape, a composite log which was a written record of the dates, times, types of calls and a synopsis or summary of the contents of the conversations included in the composite tapes. The selected daily tapes and logs as well as the composite tapes and composite log constituted only a small fraction of the total of original tapes and logs.
*331 The State points out that defendants, through such discovery, seek to show that there occurred the uninterrupted recordation of a myriad of non-subject conversations and that this constituted a failure to minimize the interception of non-subject conversation, contrary to N.J.S.A. 2A:156A-12(f). Their request for full disclosure of the tapes on such grounds, the State contends, should now be rejected as moot in light of State v. Dye, supra. This case, closely read, does not hold that there is no duty to minimize the interception of non-subject communication by desisting from their recordation while they are in progress. Id., 60 N.J. at 538-540. Moreover, in Dye, full discovery was accorded. Defendant was furnished with master or work tapes similar to the composite tape herein, but "the full original tapes [were] retained and available for inspection and comparison on defendant's request." Id. at 540. Additionally, defendants here urge that they were precluded by inadequate discovery from demonstrating that there was a failure to terminate the wiretaps "as soon as practicable," as required by N.J.S.A. 2A:156A-12(f), an issue not involved in Dye. See State v. Christy, supra, 112 N.J. Super at 61, 76-77. In view of the extensive electronic surveillances involved in this case, defendants' contention on this facet of the surveillances cannot be scotched summarily. Full discovery would have a bearing on this alleged dereliction.
Unquestionably defendants' quest for full discovery was actuated by the hope that it might eventuate in the suppression of evidence. N.J.S.A. 2A:156A-21; State v. Molinaro, 117 N.J. Super. 276 (Cty. Ct. 1971), appeal pending. The State, therefore, suggests that defendants' reliance upon Molinaro for this result is quixotic, that case having been dislodged by Dye. In Dye the Supreme Court did not sanction the suppression of all wiretap evidence merely because some of that evidence might have been gathered unlawfully. We note, however, that in Dye defendant had full discovery in the sense that he had access to all of the original tapes for any legitimate pretrial purpose. Regardless of whether *332 Molinaro is viable or moribund in the wake of Dye, a complete record was made in Molinaro on the basis of broad discovery, including the full disclosure of intercepted communications (which was acceded to by the Attorney General). Cf. State v. Sidoti, supra.
The truncated discovery accorded defendants herein was not sufficient. One cannot presage the end results of full discovery as it may affect a defendant's pretrial posture and trial preparations and strategy. We cannot speculate to the detriment of defendants herein that discovery of the whole would not have distilled some evidential benefits for the defense. These considerations impel us to require that there be a remand for the purpose of permitting defendants access to the original tapes and logs for normal discovery purposes, subject to any concrete and specific objections thereto which may be raised by the Attorney General or the court on its own motion. The court should set the extent, terms and conditions of such discovery. If, as a result thereof, motions to suppress or motions for a new trial are made or renewed, these shall be determined by the court below.

IV
There are further issues raised by defendants. Defendant Martin contends that his premises were illegally searched. The police came to Martin's premises to execute an arrest warrant for defendant Braeunig. We find no evidence, as suggested by this defendant, that the State merely used the arrest warrant as a subterfuge to effectuate an unwarranted search of Martin's premises. See R. 3:3-3(b). The trial court also found that consent was given the police officers by the owner of the apartment, which determination was within the province of the court. State v. King, 44 N.J. 346 (1965); State v. Price, 108 N.J. Super. 272, 282 (Law Div. 1970). Moreover, the officers were properly present in the apartment when they observed Martin on the telephone *333 engaged in what they believed to be criminal activity, with evidence thereof within plain view. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. DiRienzo, 53 N.J. 360, 385 (1969); State v. McKnight, 52 N.J. 35, 56 (1968). Martin's motion to suppress was properly denied.
Defendants further allege error by the trial court in its refusal to allow testimony at a motion to suppress evidence prior to trial. Defendants sought through testimony to attack the credibility of the informant whose information formed the basis of the affidavit and subsequent search warrant. The trial court was correct in denying this application. State v. Rulli, 116 N.J. Super. 120 (App. Div. 1971); State v. Gillman, 113 N.J. Super. 302 (App. Div. 1971).
Defendant Richards claims that the search warrant of August 14, 1969 was issued without probable cause. This claim was not the subject of a timely motion to suppress. R. 3:5-7; State v. Fair, 45 N.J. 77 (1965); State v. Cox, 114 N.J. Super. 556 (App. Div. 1971). In addition, defendant failed to demonstrate merit to his belated application to suppress.

V
With respect to the trial itself, defendants further claim it was error to allow the indictment and verdict sheet into the jury room because of their possible prejudicial effect. The practice of allowing an indictment into the jury room has been upheld. State v. Chauncey, 112 N.J. Super. 433 (App. Div. 1970); State v. Begyn, 58 N.J. Super. 185, 195 (App. Div. 1959), aff'd on other grounds 34 N.J. 35 (1961); State v. Profita, 113 N.J.L. 330 (E. & A. 1935). The jury was carefully instructed with respect to the format of the verdict form. We find no error with respect to this contention.

*334 VI
Defendants Martin, Miller and Richards allege they were illegally sentenced. They were sentenced on the conspiracy charge, count 1 of the indictment, to 250 days in the county jail. On the substantive charges of bookmaking and maintaining premises for bookmaking, defendants received 1-2 year sentences in the State Prison at Trenton, to be served consecutively to the sentence imposed on count 1 and concurrently with each other. The custodial terms imposed on the substantive charges were suspended upon the condition that defendants serve the full incarceration period levied under count 1.
The imposition of a conditional custodial sentence appears not to be within the contemplation of the statute. See N.J.S.A. 2A:168-1. It is axiomatic that sentences not be ambiguous and thus subject to confusion or misunderstanding as to the time and manner in which they are to be served. Sentences must be certain, definite and consistent in all their terms. State v. Heslip, 99 N.J. Super. 97 (App. Div. 1968); State v. Williams, 29 N.J. Super. 309 (App. Div. 1954); Annotation, "When sentences imposed by same court run concurrently or consecutively; and definiteness of direction with respect thereto," 70 A.L.R. 1511 (1930). The sentencing judge is accorded wide latitude in determining whether custodial sentences are to be executed or suspended, or to be served either consecutively or concurrently or whether a defendant is to be placed on probation. N.J.S.A. 2A:164-15; N.J.S.A. 2A:164-16; N.J.S.A. 2A:168-1. Sentences must be free from the taint of judicial whim or caprice. State v. Roleson, 14 N.J. 403, 407 (1954).
It would appear that the serving of the full custodial sentence imposed on count 1 was intended to be a condition precedent to the suspension of the custodial terms on the remaining substantive counts. This, defendants suggest, casts a pall or chill upon the right to appeal their convictions on the conspiracy count since a reversal would trigger the *335 execution of the more severe custodial terms imposed under the substantive gambling counts. Such an intended purpose or unintended result would not serve any appropriate function of sentencing. Cf. United States v. Jackson, 390 U.S. 570, 581-582, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968); Worcester v. Commissioner, 370 F.2d 713, 718 (1 Cir. (1966). Further, these sentences may not be sufficiently definite. The court, in meting out these respective sentences, stated that if the full period of incarceration imposed on the conspiracy count was not served "for any reason," then the consecutive custodial terms would be executed. It is difficult to fathom what circumstance would not constitute "any reason." It is not entirely clear what the effect of parole prior to serving the full 250 day sentence is intended to have upon the execution of the remaining sentences. N.J.S.A. 30:8-28. Perhaps a question might also arise should defendants be eligible for release under the county work release program during their incarceration in the county jail. N.J.S.A. 30:8-44. Whether a custodial sentence has been executed or suspended should not be shrouded in such doubts. Under all of these circumstances we direct that on the remand of this matter the court reconsider its sentences.
Also on the issue of sentencing, State v. Mulvaney, 61 N.J. 202 (1972), precludes the imposition of costs upon criminal defendants as a condition of probation under N.J.S.A. 2A:168-2. The imposition of such costs is therefore vacated. On the remand the court may consider the fixing of such costs as may be appropriate. State v. Mulvaney, supra, at 206.
The convictions are not reversed. The matter is remanded for proceedings to be undertaken consistent with this opinion. Jurisdiction is not retained.