128 N.J. Super. 12 (1974)
318 A.2d 783
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH A. FUREY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 26, 1973.
Submitted for Determination March 25, 1974.
Decided April 10, 1974.
*16 Before Judges COLLESTER, LYNCH and MICHELS.
Mr. Jeffrey L. Gold for appellant (Messrs. Feinberg & Ginsburg, attorneys).
Mr. L. Steven Pessin, Deputy Attorney General, for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. George F. Kugler, Jr., former Attorney General of New Jersey, of counsel).
The opinion of the court was delivered by MICHELS, J.S.C.
Between 1968 and 1971 the City of Wildwood had a commission form of government with three commissioners: defendant Joseph A. Furey, who was and is a physician, Wilbur Ostrander and Charles Masciarella, who was also Wildwood's mayor. Three indictments, the essential details of which are hereinafter stated, were returned against defendant.
Indictment No. 432-71 charged that defendant and Masciarella, together with one Nicholas Viscomi, conspired to purchase, obtain and act upon the granting of amusement games licenses for their personal gain.
Indictment No. 433-71 charged that defendant and Masciarella conspired with Viscomi to misuse their authority to alter an ordinance to increase the number of auction licenses in Wildwood from three to four and to offer $1,000 to Ostrander to act favorably upon such alteration, for their personal gain.
Indictment No. 434-71 charged defendant in three counts with misconduct in office in voting for and approving amusement games licenses in which he had an undisclosed interest, for his personal gain.
*17 Defendant was tried alone and convicted by a jury of all charges except those alleged in the second and third counts of indictment No. 434-71, which were dismissed at the end of the State's case. He was sentenced to a term of one to two years, which was suspended, and fined $1,000.
Defendant appeals, asserting a number of grounds for reversal.

I
We first consider defendant's contention that the trial court erred in not granting his motions for acquittal on indictment Nos. 432 and 434[1] on the ground they charge no crime. The defense that an indictment fails to charge an offense may only be raised by motion either before trial or within ten days after a verdict of guilty, or within such further time as the court may fix during such ten-day period, or on appeal, and shall not be considered during trial. R. 3:10-3. The record does not disclose that the motions to which defendant refers were made within one of the time periods specified in the foregoing rule. However, since the sufficiency of the two indictments is raised on appeal, we deem it appropriate to review the contentions.
Indictment No. 434 is predicated on N.J.S.A. 2A:85-1, which denominates all offenses of an indictable nature at common law, not otherwise expressly referred to therein, as misdemeanors. This has been held to include misconduct in office. State v. Begyn, 34 N.J. 35 (1961); State v. Seaman, 114 N.J. Super. 19, 31 (App. Div. 1971), certif. den. 58 N.J. 594, cert. den. 404 U.S. 1015, 92 S.Ct. 674, 30 L.Ed.2d 662 (1972); State v. Silverstein, 76 N.J. Super. 536, 540 (App. Div. 1962), aff'd 41 N.J. 203 (1963).
Misconduct in office means "any act or omission in breach of a duty of public concern, by one who has accepted *18 public office." 1 Burdick, Law of Crime (1946), § 272 at 387, quoted in State v. Weleck, 10 N.J. 355, 365 (1952). It has also been defined as "the violation of a prescribed duty to the public * * * for which the offender may be indicted at common law." State v. Startup, 39 N.J.L. 423, 425 (Sup. Ct. 1877); State v. McFeeley, 136 N.J.L. 102, 107 (Sup. Ct. 1947). It is essential, said the court in Weleck, supra, at 10 N.J. 366, that an indictment for misconduct in office allege both a prescribed duty of the office and facts constituting a breach thereof. Such duties are those that are cast by law on the incumbent of the office. They may be imposed by some special or private law or by a general act of the Legislature, or they may arise out of the very nature of the office itself. Where they arise out of the very nature of the office, the source of the duty need not be alleged in the indictment, for the courts will take judicial notice of such duties. Weleck, at 366.
Upon analysis, it is evident that the first count[2] of No. 434 charges the offense of misconduct in office. It alleges as follows:
(1) Continuously, between May 2, 1968 and July 15, 1970, defendant was a commissioner and the Director of Public Safety of Wildwood;
(2) As such commissioner and director he was charged with the official public duty of discharging the duties of his office, to be diligent and conscientious, to exercise his discretion reasonably, to display good faith, honesty and integrity, to be impervious to corrupting influences, and to transact the business of his office frankly and openly in the light of public scrutiny so that the public might know and be able to know and judge him and his work fairly;
(3) On May 9, 1969 defendant, together with Commissioner Masciarella and Viscomi, contributed moneys to purchase and operate an amusement games license together with *19 the business and stock situate at 922-3924 Boardwalk, Wildwood, from Paul and Anne Rugala and Anthony Polaskas, for $30,000, exclusive of stock;
(4) On May 9, 1969 defendant, contriving and intending to violate the powers and duties of his public office and to prostitute and betray the trust and confidence thereby imposed in him, unlawfully, wilfully, knowingly and corruptly allowed all agreements, leases, promissory notes, licenses and settlement sheets to be drawn in the name of Viscomi and his wife without the names of defendant and Masciarella appearing thereon;
(5) On June 17, 1969 defendant acted upon, voted for and passed a resolution approving an amusement games license to Viscomi for 3922 Boardwalk, in which defendant had a direct or indirect undisclosed interest from which he might realize a personal gain through his action;
(6) On March 17, 1970 defendant, in execution of "the said conspiracy" and to effect its object (sic, conspiracy is not otherwise alleged in this count), did act upon, vote for and pass a resolution approving an amusement games license to Joseph Cardamone and Manuel Wolf for 3922-24 Boardwalk;
(7) Defendant did wilfully and corruptly prostitute, violate and betray the duties of his public office and the public trust and confidence reposed in him, contrary to the provisions of N.J.S.A. 2A:85-1.
In Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433 (1952), cert. den. 344 U.S. 838, 73 S.Ct. 25, 97 L.Ed. 652 (1952), reh. den. 344 U.S. 888, 73 S.Ct. 181, 97 L.Ed. 687 (1952), the New Jersey Supreme Court, speaking of members of a board of chosen freeholders and of a bridge commission, said in language which is particularly apt here, as follows:
[They] are public officers holding positions of public trust. They stand in a fiduciary relationship to the people whom they have been elected or appointed to serve. [Citations omitted]. As fiduciaries and trustees of the public weal they are under an inescapable obligation *20 to serve the public with the highest fidelity. In discharging the duties of their office they are required to display such intelligence and skill as they are capable of, to be diligent and conscientious, to exercise their discretion not arbitrarily but reasonably, and above all to display good faith, honesty and integrity. [Citations omitted]. They must be impervious to corrupting influences and they must transact their business frankly and openly in the light of public scrutiny so that the public may know and be able to judge them and their work fairly. When public officials do not so conduct themselves and discharge their duties, their actions are inimicable to and inconsistent with the public interest, and not only are they individually deserving of censure and reproach but the transactions which they have entered into are contrary to public policy, illegal and should be set aside to the fullest extent possible consistent with protecting the rights of innocent parties. [Citations omitted].
These obligations are not mere theoretical concepts or idealistic abstractions of no practical force and effect; they are obligations imposed by the common law on public officers and assumed by them as a matter of law upon their entering public office. The enforcement of these obligations is essential to the soundness and efficiency of our government, which exists for the benefit of the people who are its sovereign. Constitution of 1947, art. I, par. 2. [8 N.J. at 474-476]
Defendant contends that even though the indictment alleges a conflict of interest, which perhaps would be sufficient to disqualify him from voting, such conflict is not a crime. No case cited by him supports his thesis. While it is true that a municipal ordinance or resolution may be set aside if it is infected with the taint of self-interest of the officials who voted for it, cf. Pyatt v. Mayor, etc., Dunellen, 9 N.J. 548, 555 (1952), it is likewise true that such an official may be prosecuted for his misconduct. See Driscoll, supra, where the court said (8 N.J. at 476), "The citizen is not at the mercy of his servants holding positions of public trust nor is he helpless to secure relief from their machinations except through the medium of the ballot, the pressure of public opinion or criminal prosecution." (Emphasis supplied). In State v. Garrison, 130 N.J.L. 350 (Sup. Ct. 1943), convictions were affirmed on charges which broadly involved the misuse by members of the Board of Aldermen of the City of Paterson of their positions as such members. The indictment was held sufficient.
*21 A public official acts corruptly and is guilty of misconduct in office when he has an undisclosed interest in a venture which comes before the body of which he is a member, and he acts in favor of that interest through the office he holds. Indictment No. 434 plainly charges defendant with the crime of misconduct in office and is legally sufficient.
What we have said concerning Indictment No. 434 applies as well to Indictment No. 432. That indictment charges defendant and Masciarella with unlawfully conspiring, during the same time period alleged in No. 434, to purchase, obtain and act upon the granting of licenses, with bad motives and with wrongful and corrupt design or intent when they might realize a personal gain through their actions. The indictment then alleges overt acts identical to some of the acts alleged in No. 434. Similarly, we hold that Indictment No. 432 charges defendant in equally plain language with conspiracy to commit the crime of misconduct in office.

II
Defendant, saying that his presence and that of Masciarella were "necessary" to constitute a quorum of commissioners and that no action could be taken without the affirmative votes of two members, contends that the court erred in denying his motions for an acquittal based on the "doctrine of necessity" with respect to Indictments No. 432 and 434. This contention has absolutely no merit. The short answer is that defendant, having created the situation, may not escape his criminal liability through such a specious argument. Certainly, this court will not countenance the application of the "doctrine of necessity" where, as here, fraud or corruption is involved.

III
Defendant contends that the trial court erred in refusing to grant his pretrial motion to dismiss the indictments on *22 the ground that he had not been properly apprised of his rights before testifying before the grand jury.
Defendant voluntarily appeared before the grand jury. Before he testified he was apprised of his constitutional rights by both the prosecutor on April 14, 1972 and by the grand jury on April 18, 1972. He signed waivers of immunity on both dates, and he well knew that he was the target of the grand jury inquiry. Nevertheless, he contends that he did not understand the scope of the investigation, arguing that at no time before he voluntarily testified was he made aware that the grand jury was investigating anything to do with 3922-3924 Boardwalk, except as related to altering the ordinance. He specifically argues that at no time was he made aware that there was any investigation concerning the voting for amusement games licenses for which he was subsequently indicted and convicted. This argument lacks any merit whatsoever.
In addition to being apprised fully of his rights, signing the waivers of immunity and knowing full well that he was the target of an investigation, defendant was expressly told by Captain Hickman on April 14, 1972 that they were investigating "the allegations of plans, proposal, or/and [sic] conspiracy to change an ordinance to allow another auction house on the Wildwood Boardwalk." The scope of the investigation was explained adequately to defendant. The inquiry into defendant's voting for amusement games licenses was within the scope of the investigation into defendant's misconduct in office and conspiracy to alter the ordinance in question.
Defendant's reliance on State v. Sarcone, 96 N.J. Super. 501 (Law Div. 1967), and State v. Rosania, 96 N.J. Super. 515 (Law Div. 1967), is clearly misplaced and neither provides any support for defendant's argument. Accordingly, the trial court properly denied the motion to dismiss the indictments.

*23 IV
Defendant argues that his conviction for conspiracy under Indictment No. 432 should be reversed because the co-conspirator named therein, Mayor Masciarella, was subsequently acquitted at a separate trial on that indictment. We disagree.
The gist of the crime of conspiracy is an unlawful agreement between two or more persons. See State v. Carbone, 10 N.J. 329 (1952). Thus, we agree that it is impossible for one person to conspire with himself alone (see State v. Collins, 120 N.J. Super. 48, 50 (Law Div. 1972)), and we recognize that there is authority that if all but one of the named co-conspirators are acquitted a conviction of the remaining one cannot logically stand. See State v. Collins, supra; State v. Goldman, 95 N.J. Super. 50, 52 (App. Div. 1967), certif. den. 50 N.J. 288 (1967). Cf. State v. Oats, 32 N.J. Super. 435, 440-441 (App. Div. 1954). However, this rule has no application in this case since Indictment No. 432 names a third co-conspirator, Nicholas Viscomi. While Viscomi was not indicted, and testified for the State under a grant of immunity, nevertheless, he was named in the indictment as a co-conspirator, and the evidence established that he was involved with defendant and Masciarella in the conspiracy charged in that indictment. Accordingly, the conviction of defendant on Indictment No. 432 must stand.

V
Defendant further contends that the trial court erred in refusing to permit defense counsel to cross-examine Commissioner Ostrander concerning his expectations for favorable treatment on his own indictment in consideration for his testifying for the State against defendant. We agree.
There can be no doubt that defense counsel should be afforded wide latitude in his cross-examination of a *24 State's witness in order to establish bias. State v. Pontery, 19 N.J. 457, 472 (1955). While Ostrander was not an accomplice of defendant, and while the questioning concerned a completely separate indictment from the one on which defendant was being tried, nevertheless, Ostrander's expectation of favorable treatment in connection with his indictment in exchange for his testimony as a State's witness against defendant bore directly on the weight to be given such testimony. The jury should have been permitted to consider this evidence in determining Ostrander's credibility. See State v. Mathis, 47 N.J. 455, 468-469 (1966); State v. Spruill, 16 N.J. 73, 78-79 (1954); State v. Curcio, 23 N.J. 521, 525 (1957); State v. Zwillman, 112 N.J. Super. 6, 18-19 (App. Div. 1970), certif. den. 57 N.J. 603 (1971).
Ostrander's testimony was relevant solely to Indictment No. 433, which charged defendant and Masciarella with conspiracy to amend the Wildwood Auction Ordinance and to offer a $1,000 bribe to Ostrander to act favorably upon such amendment. Accordingly, defendant's conviction on Indictment No. 433 is reversed and that matter remanded for a new trial on that indictment.
However, we disagree with defendant that his conviction on Indictments Nos. 432 and 434 should also be reversed. Ostrander's testimony was not related to, nor did it furnish, any basis for defendant's conviction on those indictments. Indictment No. 432, as pointed out above, charged defendant with conspiracy to purchase, obtain and act upon the granting of amusement games licenses for his personal gain, and Indictment No. 434 charged defendant with misconduct in office in voting for and approving amusement games licenses. Thus, Ostrander's testimony did not go to these charges and could not form the basis of these convictions. Defendant was convicted thereon on the basis of entirely different evidence, and therefore his convictions on Indictments Nos. 432 and 434 were proper.

*25 VI
Finally, defendant contends that the verdict against him on each of the indictments was contrary to the weight of the evidence. We disagree. Our review of the entire record established that the evidence produced by the State, together with all the favorable inferences which reasonably could be drawn therefrom, was sufficient for a reasonable jury to find defendant guilty of the charges set forth in Indictments Nos. 432 and 434 beyond a reasonable doubt. See State v. Reyes, 50 N.J. 454, 458-459 (1967); State v. Yormark, 117 N.J. Super. 315, 343 (App. Div. 1971), certif. den. 60 N.J. 138 (1972).
In view of our ruling that the conviction on Indictment No. 433 should be reversed, we do not deem it necessary to comment on the sufficiency of the evidence with respect to that conviction.
Accordingly, the judgments of conviction on Indictments No. 432 and No. 434 are affirmed, and the judgment of conviction on Indictment No. 433 is reversed and remanded for a new trial.
NOTES
[1] Hereinafter the court year in which the indictments were returned are omitted for the sake of brevity.
[2] We have already noted that the second and third counts were dismissed at trial.