**Joseph A. FUREY, Petitioner,**

v.

**William F. HYLAND, Attorney General of the State of New Jersey, Respondent.**

Civ. A. No. 75–0421.

United States District Court, D. New Jersey, June 6, 1975.

McElroy, Connell, Foley & Geiser, Newark, N. J., for petitioner; Kevin J. Coakley, Adrian M. Foley, Jr., Newark, N. J., of counsel.

William F. Hyland, Atty. Gen., of the State of New Jersey, Dept. of Law & Public Safety, App. Section by Robert J. Genatt, Deputy Atty. Gen., East Orange, N. J., for respondent.

## OPINION

BROTMAN, District Judge.

This case involves a habeas corpus petition brought by Joseph A. Furey pursuant to 28 U.S.C. § 2241 et seq. Furey was indicted, tried and ultimately convicted (by a jury) on September 28, 1972 in the Superior Court of New Jersey, Law Division, of the following crimes: (1) conspiring to purchase, obtain, and act upon the granting of amusement game licenses for personal gain (Indictment No. 432–71); (2) conspiring to misuse authority to alter an ordinance to increase the number of auction licenses in Wildwood and to offer a bribe to act favorably upon said alteration (Indictment No. 433–71); (3) misconduct in office in voting for and approving amusement games licenses for personal gain (First Count of Indictment No. 434–71).

Furey was sentenced to three concurrent terms of not less than one nor more than two years and was fined $1,000 on each conviction. The prison terms were suspended. No term of probation was imposed. The fines were paid by the petitioner.[1]

Furey appealed his conviction to the Appellate Division which affirmed the convictions on Indictment Nos. 432 and 434. State v. Furey, 128 N.J.Super. 12, 318 A.2d 783 (App.Div.1974). However, it reversed the conviction on Indictment No. 433, holding error was committed by the trial court in refusing to allow Furey to cross-examine one Wilbur Ostrander concerning Ostrander's expectations for favorable treatment from the State. 128 N.J.Super. at 23–24, 318 A.2d at 789.[2] At the time of trial Ostrander was under indictment on related charges. Having determined that Ostrander's testimony did not relate to or form the basis for the Petitioner's conviction on Nos. 432 and 434, the Appellate Division refused to reverse the other two convictions. 128 N.J.Super. at 24, 318 A.2d at 789.

Petitioner sought certification with the New Jersey Supreme Court, which petition was denied. State v. Furey, 65 N.J. 578, 325 A.2d 711 (1974). Petitioner's motion for reconsideration of denial of certification was also denied. (M–300, order filed Nov. 27, 1974). Having exhausted his state remedies,[3] Furey's petition for a writ of habeas corpus is now before this court.

---

1. This point was conceded at oral argument by petitioner's counsel.

2. Both petitioner and Ostrander were members of the Board of Commissioners of the City of Wildwood.

3. 28 U.S.C. § 2254(b) provides:
   An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

His petition raises, respectively, questions of jurisdiction and substance, as follows:

1. Whether Furey is "in custody" within the meaning of the federal habeas corpus statute.[4]

2. Whether the trial court's refusal to permit full and complete cross-examination of Wilbur Ostrander resulted in a denial of Furey's rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution.[5]

A conclusion by this court that Furey is not "in custody" will foreclose consideration of the substantive issue.

The argument that Furey is "in custody" takes two forms. First, because Furey will suffer various disabilities as a result of his conviction, he is "in custody." These disabilities are alleged to include: the real and present danger that the petitioner, a licensed physician, may be deprived of his license to practice medicine; damage to petitioner's status and reputation both as a physician and as a member of the community in which he resides; the collateral consequence that the petitioner, a former public official, is effectively prevented from resuming his public life; aggravation of a pre-existing skin condition; the fine; and certain statutory disabilities imposed upon persons convicted of crimes.[6] Second, petitioner argues that the sus-pended sentence operates, by itself, as a restraint on his liberty, sufficient enough to invoke the habeas corpus jurisdiction of this court.

■ Historically, habeas corpus was only available when a prisoner was subject to tangible physical restraints. Note, "Developments in the Law—Habeas Corpus," 83 Harv.L.Rev. 1038, 1073 (1970). In recent years, however, the requirement of physical restraint has been relaxed considerably. Thus, the writ has been made available to persons released on parole, Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), placed on probation, United States ex rel. De Rosa v. Superior Court of New Jersey, 379 F.Supp. 957, 960 (D. N.J.1974); United States ex rel. Clark v. Mulligan, 347 F.Supp. 989, 990 (D. N.J.1972), released on their own recognizance, Hensley v. Municipal Court, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.8d 294 (1973) and even to persons unconditionally released from prison subsequent to the filing of their petition. Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). Nevertheless, in its most recent pronouncement the Supreme Court explicitly recognized that "[t]he custody requirement of the habeas corpus statute is ·designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty." Hensley, supra, 411 U.S. at 351, 93 S. Ct. at 1574. See also Preiser v. Rodri-

---

4. 28 U.S.C. § 2241 provides:
   (c) The writ of habeas corpus shall not extend to a prisoner unless—

   .     .     .     .     .

   (3) He is in custody in violation of the Constitution or laws or treaties of the United States .   .   . .
   28 U.S.C. § 2254(a) provides:
   The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

5. The Sixth Amendment provides in pertinent part:

In all criminal prosecutions, the accused shall enjoy the right .   .   .   to be confronted with the witness against him .   .   . .

6. Said disabilities are alleged to include: attack on petitioner's credibility as a witness, N.J.S.A. 2A:81–12; bar from holding amusement game license, N.J.S.A. 5:8–103; bar from holding liquor license (assuming arguendo that offenses petitioner stands convicted of involve moral turpitude), N.J.S.A. 33:1–25; bar from obtaining permit to purchase weapon, N.J.S.A. 2A:151–33.

In addition, petitioner may suffer other disabilities including: disqualification from serving as a juror, N.J.S.A. 2A:69–1; disqualification from holding municipal office or employment, N.J.S.A. 40:69A–166.

guez, 411· U.S. 475, 486 n. 7, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Following *Hensley, supra,* the Ninth Circuit held that a "fine only" sentence, as was imposed on the petitioner herein, is not a severe restraint on individual liberty. *Edmunds v. Chang,* 509 F.2d 39 (9th Cir. 1975); petition for cert. filed, 43 U.S. L.W. 3572 (U.S. Apr. 14, 1975) (No. 74–1284).[7]

7. In *Edmunds, supra,* at 41, as here, the petitioner argued without success that he would suffer various disabilities as a result of his contempt conviction. The several contentions raised by Edmunds, a lawyer, have relevance to the case of Dr. Furey, a fellow professional.

Noting that there was no showing that disciplinary proceedings had been initiated or even contemplated, and observing further the unlikelihood of such proceedings resulting in sanctions against Edmunds, the Ninth Circuit discounted the possibility that Edmunds might suffer disciplinary action. The petitioner herein asserts that *Edmunds, supra,* is distinguishable because he faces the real possibility that he will lose his license to practice medicine. This assertion is, however, subject to some dispute. No evidence was presented to indicate that license revocation proceedings under N.J.S.A. 45:9–16 have been initiated or are contemplated against Dr. Furey.

Evidencing New Jersey's public policy to rehabilitate convicted criminals, N.J.S.A. 2A:-168A–1 declares it to be "in the public interest to assist the rehabilitation of convicted offenders by removing impediments and restrictions upon their ability to obtain employment . . . ." N.J.S.A. 2A:168A–2 provides:

Notwithstanding the contrary provisions of any law or rule or regulation issued pursuant to law, no State, county or municipal department, board, officer or agency, hereinafter referred to as "licensing authority" authorized to pass upon the qualifications of any applicant for a license or certificate of authority or qualification to engage in the practice of a profession or business or for admission to an examination to qualify for such a license or certificate may disqualify or discriminate against an applicant for a license or certificate or an application for admission to a qualifying examination on the grounds that the applicant has been convicted of a crime, or adjudged a disorderly person, *except that a licensing authority may disqualify or discriminate against an applicant for a license* or certificate if N.J.S. 2A:93–5 is applicable or *if a conviction for a crime relates adversely to the occupation, trade, vocation, profession or business for which the license or certificate is sought.* In determining that a conviction for a crime relates adversely to the occupation, trade, vocation, profession or business,

the licensing authority shall explain in writing how the following factors, or any other factors, relate to the license or certificate sought:

a. The nature and duties of the occupation, trade, vocation, profession or business, a license or certificate for which the person is applying:

b. Nature and seriousness of the crime:

c. Circumstances under which the crime occurred:

d. Date of the crime:

e. Age of the person when the crime was committed:

f. *Whether the crime was an isolated or repeated incident:*

g. Social conditions which may have contributed to the crime:

h. *Any evidence of rehabilitation, including good conduct* in prison or *in the community,* counseling or psychiatric treatment received, acquisition of additional academic or vocational schooling, successful participation in correctional work-release programs, or the recommendation of persons who have or have had the applicant under their supervision. [emphasis added]

(N.J.S.A. 2A:168A–1 et seq. refers to applicans for a license. Technically any proceeding which might be brought against Dr. Furey pursuant to N.J.S.A. 45:9–16 would be for suspension or revocation of his license. However, the public policy reflected in 168A–1 would be one important factor for the Board of Medical Examiners to consider).

Concerning the rehabilitation factor (or here the lack of need thereof) the comments of the sentencing judge are illuminating:

I am not dealing with a case of a person who has had a record, a criminal record of any type; I am dealing with a person who has always enjoyed the highest and best reputation in the county if not more than Cape May County . . . . .

I do not feel under all the circumstances that the punishment requires any probation and I am satisfied that the doctor will not be rehabilitated in the slightest degree by that; and, consequently, no probation will be imposed.

Suffice it to say, therefore, that the alleged danger to Dr. Furey's medical license is speculative (both as a matter of fact and law).

In *Edmunds, supra,* it was also contended that the petitioner's reputation as a lawyer and his effectiveness in the courts would suffer, arguments similar in kind to the alle-

Petitioner points to *Carafas, supra*, as supportive of his position. It is true that there is a surface similarity between *Carafas, supra*, and the case at bar. However, upon closer examination the two cases are clearly distinguishable. In *Carafas, supra*, the petitioner was actually in prison at the time he filed his habeas corpus petition in the federal district court. Consequently, it was undisputed that jurisdiction had attached. The only question for the Court was whether the petition had been mooted, as petitioner had been unconditionally released while the case was on appeal. The Court found that the petition was not moot since the petitioner would suffer collateral disabilities which would survive the expiration of his sentence. These disabilities related to his capacity to engage in business, to serve as a union official, and to serve as a juror. *Carafas, supra* 391 U.S. at 237, 88 S.Ct. 1556. As has been noted, Dr. Furey alleges disabilities of a similar nature, the most serious of which is, no doubt, the possibility that his license to practice medicine may be revoked.

Petitioner's argument that the disabilities, standing alone, are sufficient to place him "in custody" is misplaced. In *Carafas, supra*, unlike the case at bar, the petitioner was restrained when he filed his petition. The discussion of the disabilities in *Carafas, supra*, was necessary only to decide the mootness issue. *See* Pueschel v. Leuba, 383 F. Supp. 576, 580 (D.Conn.1974). If the Court had intended to hold that the

disabilities were enough, by themselves, to invoke habeas corpus jurisdiction, it need not have placed any emphasis, as it so clearly did, on the petitioner's confinement at the time he filed his petition. *Carafas, supra* 391 U.S. at 238, 88 S.Ct. 1556.

■ The disabilities which petitioner alleges he will suffer cannot, by themselves, invoke this court's habeas corpus jurisdiction. Absent a custodial sentence, or other recognized restraints,[8] one is not in custody within the meaning of the federal habeas corpus statute. United States ex rel. Dessus v. Pennsylvania, 452 F.2d 557, 560 (3rd Cir. 1971), cert. denied, 409 U.S. 853, 93 S.Ct. 184, 34 L.Ed.2d 96 (1972). See 83 Harv.L. Rev., *supra* at 1077–1078. As stated by Justice Brennan in Fay v. Noia, 372 U.S. 391, 430, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) it is "detention *simpliciter*" which furnishes the jurisdictional prerequisite for the exercise of the Great Writ.

■ To hold otherwise would render the "in custody" requirement of Sections 2241 and 2254 a nullity, and extend the habeas corpus remedy to all persons convicted of crimes. It would ignore the teaching of *Hensley, supra*, that the writ of habeas corpus is available only to remedy "severe restraints on individual liberty." Because the writ is an extraordinary remedy, its use is properly circumscribed to those cases where "the extraordinary restraints of custodial situations" are present. Note, 83 Harv.L.Rev., *supra* at 1073.[9]

gations concerning Dr. Furey's status as a doctor. The Ninth Circuit discounted such speculative and incidental consequences, as does this court. Here no evidence was presented, or allegations made, concerning any loss of income or hospital privileges. Indeed it appears that Dr. Furey has continued to practice medicine in the two and one-half years since his conviction.

The Ninth Circuit also considered the hypothetical argument that had the petitioner refused to pay his fine and gone to jail for said refusal, he would be "in custody." This court is troubled by such an anomalous result. While doubt is expressed that jurisdic-

tion could be created in such a contrived manner, see Pueschel v. Leuba, 383 F.Supp. 576, 580 (D.Conn.1974), here the fine has been paid. Consequently, the issue need not be considered.

8. *See* Jones v. Cunningham, *supra*; DeRosa v. Superior Court, *supra*; Clark v. Mulligan, *supra*, and Hensley v. Municipal Court, *supra*.

9. The court is mindful of the serious consequences which may flow from petitioner's conviction, namely, the possibility that petitioner's license to practice medicine may be revoked. (See, however, n. 7 *infra*). Indeed, such a result for Dr. Furey may be "more

Alternatively, petitioner asserts that the suspended sentence which he received is sufficient to place him "in custody." This argument is broken down into two parts.

■ First, petitioner asserts that the suspended sentence which he received implicitly imposed upon him a term of probation.[10] N.J.S.A. 2A:168–1 vests the courts with the power

> . . . to suspend the imposition or execution of sentence, and also to place the defendant on probation. . . .

While the court may impose a term of probation with a suspended sentence, In re Buehrer, 50 N.J. 501, 509, 236 A.2d 592, 596 (1967), it is equally clear that the execution of sentence may be suspended without placing a defendant on probation. As stated in State v. Braeunig, 122 N.J.Super. 319, 334, 300 A.2d 346, 354 (App.Div.1973):

> The sentencing judge is accorded wide latitude in determining whether custodial sentences are to be executed or suspended, or to be served either consecutively or concurrently or whether a defendant is to be placed on probation. N.J.S.A. 2A:164–15; N.J.S.A. 2A:164–16; N.J.S.A. 2A:168–1.

Petitioner's assertion that a suspended sentence necessarily implies a term of probation is without support either in law or logic.[11]

■ Second, apart from any implied term of probation, petitioner contends that the suspended sentence he received,[12] by itself, places him "in custody", since he remains subject to the possibility of resentencing at some future date. Such resentencing could, it is asserted, result in a harsher penalty (possibly a jail sentence).

But, N.J.Ct.R. 3:21–10 contradicts petitioner's position. R. 3:21–10(a) provides in pertinent part:

> A motion to *reduce or change* a sentence shall be filed not later than 60 days after the date of the judgment of conviction, or, if an appeal is taken within the 60 days, not later than 20 days after the date of the judgment

---

serious . . . than a brief stay in jail. . . . " Argersinger v. Hamlin, 407 U.S. 25, 48, 92 S.Ct. 2006, 2018, 32 L.Ed.2d 530 (1972) (Powell, J., concurring). As the Supreme Court said in Bell v. Burson, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971):

> Once licenses are issued . . . their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees.

Quite obviously the stakes may become high for Dr. Furey.

But this court cannot fashion a rule that doctors, and other licensees, are "in custody." To do so would in effect, create a special class of petitioners and exclude by implication, those petitioners without a license or livelihood, such as the indigent petitioner in *Dessus, supra,* aff'd, 316 F.Supp. 411 (E.D. Pa.1970). Such a result would be an anathema to the Fourteenth Amendment requirement that all persons receive equal protection of the laws. See Gilmore v. Greene County Democratic Party Executive Committee, 435 F.2d 487, 491 (5th Cir. 1970).

10. A person on probation is "in custody" within the meaning of Sections 2241 and 2254. DeRosa v. Superior Court, *supra.*

11. In State v. Ward, 57 N.J. 75, 84, 270 A.2d 1, 6 (1970) the New Jersey Supreme Court in modifying a sentence, ordered that it be suspended, but specifically refused to impose probation.
See sentencing judge's comments. n. 7 *infra.*

12. The trial court's sentence was as follows:
[W]ith respect to this indictment [432–71] the Court will impose a term in the State Prison of not less than one year nor more than two years but this sentence will be suspended.
In addition to that I will impose a fine of $1,000. . . .
With respect to Indictment 433–71, I will impose the same sentence; that is, a suspended sentence of one to two years in State Prison, a minimum of one year, a maximum of two years, and also a fine of $1,000 which is not suspended. . . .
With respect to the third indictment, 434–71, I will impose a suspended sentence, State Prison of not less than one nor more than two years, that will be suspended, and a fine will be imposed of $1,000.

of the appellate court . . . .
[emphasis added]

The omission of the word "increase" (or words of like meaning) from the Rule is most significant, as the Supreme Court of New Jersey clearly stated in State v. Matlack, 49 N.J. 491, 500–501, 231 A.2d 369, 374–375 (1967), cert. denied, 389 U.S. 1009, 88 S.Ct. 572, 19 L. Ed.2d 606 (1967);

> The rule authorizes a trial judge subject to time limitations to "reduce or change" a sentence. We read this language to sanction reconsidered leniency and not severity. The word "reduce" obviously points to this interpretation; the word "change" seems directed only to differences in kind and not degree (e. g. fine in lieu of imprisonment): the omission of express authority to increase sentences in the context of the rule is highly significant. We conclude that this language does not authorize a trial judge to increase a sentence previously imposed by him.

> Under the common law a judge could not increase or decrease a sentence once it had gone into operation. State v. Addy, 43 N.J.L. 113, 116 (Sup.Ct.1880). Our R.R. 3:7–13(a) modifies the common law by allowing a trial judge to reduce or change a sentence within time limitations, but does not empower him to increase sentences. Cf. State v. Laird, 25 N.J. 298, 307, 135 A.2d 859 (1957). A

rule which purported to allow a trial judge to increase a sentence previously imposed would raise serious problems under the constitutional right to be free from double jeopardy. See United States v. Benz, 282 U.S. 304, 307–310, 51 S.Ct. 113, 75 L.Ed. 354, 356–358 (1931); Ex parte Lange [85 U.S. 163] 18 Wall. 163, 173, 21 L.Ed. 872, 878 (1874); United States v. Rosenstreich, 204 F.2d 321 (2nd Cir. 1953); State v. Laird, supra, 25 N.J. at p. 312; State v. Tyler, 88 N.J.Super. 396, 405–406, 212 A.2d 573 (App. Div.1965), cert. den. 384 U.S. 992, 86 S.Ct. 1898, 16 L.Ed.2d 1008 (1966).[13] [emphasis added]

Thus R. 3:21–10(a) precludes the petitioner from being resentenced.[14]

As stated in State v. Matlack, supra, the rule against harsher resentencing is one of constitutional dimensions. Such sentences are forbidden by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.[15] It has long been settled that the protection against being put in double jeopardy applies to sentencing, as well as trial. Ex parte Lange, 85 U.S. (18 Wall.) 163, 173, 21 L.Ed. 872 (1873); United States v. Benz, 282 U.S. 304, 307, 51 S.Ct. 113, 75 L.Ed. 354 (1931) (dictum); United States v. Welty, 426 F.2d 615, 618–19 (3rd Cir. 1970); United States v. Corsan, 449 F.2d 544, 550 (3rd Cir. 1971); United States v. Rosenstreich, 204 F.2d 321 (2nd Cir. 1953);[16]

---

13. R.R. 3:7–13(a), the source rule for R. 3:21–10, was virtually identical to the rule currently in force.

14. Where, as here, the sentence has been executed by payment of the fine, it is one of "the plainest principles of justice [that] the jurisdiction of the court to increase the punishment is at an end." State v. Laird, 25 N.J. 298, 312, 135 A.2d 859, 867 (1957). See Acme Poultry Corporation v. United States, 146 F.2d 738, 739 (4th Cir. 1944) cert. denied, 324 U.S. 860, 65 S.Ct. 865, 89 L.Ed. 1417 (1945); United States v. Rosenstreich, 204 F.2d 321, 322 (2nd Cir. 1953).

15. The Fifth Amendment provides in pertinent part:
nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb.

16. Judge Frank said in Rosenstreich, supra at 321–322:
It is well settled that, thanks to the double-jeopardy provision of the Fifth Amendment, a federal court may not increase (a) a sentence of imprisonment, once execution of the sentence has begun, or (b) a sentence to pay a fine, after the fine first imposed has been paid.

Borum v. United States, 133 U.S.App. D.C. 147, 409 F.2d 433, 440 (D.C.Cir. 1967), cert. denied 395 U.S. 916, 89 S. Ct. 1765, 23 L.Ed.2d 230 (1969)

The classic articulation of this principle is found in Ex parte Lange, *supra*, 85 U.S. (18 Wall.) 163 at 168:

> If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offense. And . . . there has never been any doubt of [this rule's] entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offense.

More recently the Double Jeopardy Clause has been held applicable to the states through the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Clearly, the protection against being placed in double jeopardy would preclude any attempt to impose upon the petitioner a harsher penalty.[17]

Thus, the suspended sentence, by itself, is inadequate to invoke this court's habeas corpus jurisdiction. United States ex rel. Wojtycha v. Hopkins (3rd Cir., filed May 29, 1975). *See* Dessus v. Pennsylvania, *supra*.

Petitioner not being "in custody", as required by 28 U.S.C. §§ 2241, 2254, this court is without jurisdiction to entertain his writ of habeas corpus. Accordingly, the petition is dismissed.

Counsel for the respondent shall submit an appropriate order.

---

17. North Carolina v. Pearce, 395 U.S. 711, 719–721, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) does not suggest a contrary result. In *Pearce*, *supra*, a harsher penalty was imposed upon resentencing, but only after the prior conviction and sentence had been set aside at the defendant's behest. See Tipton v. Baker, 432 F.2d 245, 248 n. 5 (10th Cir. 1970).

Nor does the court find Ex parte Baer, 140 N.J.Eq. 571, 55 A.2d 248 (E. & A.1947) persuasive in light of R. 3:21–10 and the constitutional principles articulated above. If *Baer*, *supra*, has any continuing validity, it must be narrowly limited to its facts (situation where defendants were resentenced when they failed to cooperate in the prosecution of codefendants, an implied condition of the original sentence).