UNITED STATES of America,
Appellee,

v.

Salvatore J. MARINO, James Borgese and
Marie McGinley, Appellants.

Nos. 206–209, Dockets 33802–33805.

United States Court of Appeals
Second Circuit.

Argued Dec. 8, 1969.

Decided Jan. 14, 1970.

William Sonenshine, Brooklyn, N. Y. (Evseroff, Newman & Sonenshine, and Gustave H. Newman, Brooklyn, N. Y., of counsel), for appellants.

James D. Zirin, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty. for Southern District of New York, New York City, and Elkan Abramowitz, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before MOORE and KAUFMAN, Circuit Judges, and RYAN,* District Judge.

PER CURIAM:

Salvatore Marino and James Borgese made representations to the victims of their scheme to defraud that they would be able to obtain franchises from General Motors Corporation for the sale of Cadillac automobiles. To support the false claims of intimacy with influential officials in General Motors, Marino introduced his prospective victims to Sidney Littman, an attorney who was represented to have done legal work for General Motors officials, James Reynolds, who was represented to be a public relations man for General Motors, and his "tall, statuesque blond" girl-

---

* Of the Southern District of New York, sitting by designation.

friend, Marie McGinley, who was represented to be the girlfriend of a General Motors official.[1] The success of these misrepresentations is illustrated by the fact that the victims—two groups of experienced businessmen—were induced to deposit some $1.3 million in escrow with Littman for the eventual purpose of bribing General Motors officials.

The conspirators then were successful in persuading their victims that by participating in a game of chance with an "eccentric millionaire" they could curry the favor of the fictitious officials. After collecting initial winnings (which were invested in future Cadillac deals), the victims lost substantial sums in an extravagant bet. At this stage of the scheme, Marino brought in his friends Donald Alfano and Anthony Petrozelli, whose role it was to persuade the victims that the losses were to racketeers who intended to employ gangland style collection techniques.[2] The ultimate objective of the scheme was to terrorize the victims so that they would execute general releases of the escrow funds.

■ Counts three through seven alleged violations of the wire fraud statute, 18 U.S.C. § 1343. Counts eight and nine alleged violations of the mail fraud statute, 18 U.S.C. § 1341. Relying on Pereira v. United States, 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435 (1954) and Parr v. United States, 363 U.S. 370, 389, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960), the appellants contend that these communications were not "incident to an essential part of the scheme." With the exception of the telephone call charged in count six, discussed below, it is clearly revealed on the record that the use made of the facilities of communication charged in the indictment is not the sort of collateral use that is insufficient to put the crime within federal criminal jurisdiction. Only the telephone call from Marino to Marie McGinley, the purpose

of which is unclear from the record, fails to fulfill the requirement of the statutes involved that the communication be "for the purpose of executing such scheme." For this reason we vacate the conviction under count six.

■ Count five is based on a telegram received by one of the victims in New York. The record reveals that a telegram was dictated in New York City by Marino to Petrozelli for delivery to the victim involved. The appellants contend that the proof fails to reveal that the telegram was "transmitted by means of wire * * * in interstate or foreign commerce" as required by 18 U.S.C. § 1343. On the record before us it is just as probable as not that a telegraph office received the message from Petrozelli, prepared the telegram on a typewriter and presented it to a messenger for delivery. It is difficult to infer that the telegram was transmitted in interstate commerce even if we were to assume that it was transmitted by wire. The conviction under count five must be vacated.

■ We fail to find merit in the contention that the evidence against Marie McGinley was insufficient to support the jury's verdict. There is ample factual basis to conclude that she was a knowing participant in the alleged scheme to defraud and that she should have reasonably foreseen the use of the mails and other interstate facilities.

The appellants attack the charge given by the trial judge as prejudicial. We have carefully examined their objections (some raised for the first time on appeal) and do not find reversible error.

■ Borgese was sentenced to concurrent terms of imprisonment of three and one-half years on each of the nine counts. Marino was sentenced to concurrent terms of imprisonment of five years on counts one through five and

---

1. The defendant Littman has appealed separately from his conviction. United States v. Littman, 421 F.2d 981 (2d Cir., argued October 16, 1969). The defendant Reynolds was not tried, having previ-

ously pleaded guilty and consented to testify for the prosecution.

2. Defendants Alfano and Petrozelli have withdrawn their appeals.

**642**

concurrent terms of imprisonment of two and one-half years on counts six through nine, for a total term of imprisonment of seven and one-half years. The Supreme Court has recently held that "there is no jurisdictional bar to consideration of challenges to multiple convictions, even though concurrent sentences were imposed." Benton v. Maryland, 395 U.S. 784, 791, 89 S.Ct. 2056, 2061, 23 L.Ed.2d 707 (1969). We are firmly convinced that the removal of the convictions on counts five and six would have no effect on the sentences received by the appellants. Nor do we find any "taint" to be carried over to the other counts from failure to dismiss counts five and six before the case was sent to the jury. All counts referred to the same scheme to defraud and all evidence presented on counts five and six is relevant to the overall conspiracy count—the only count on which all three appellants were jointly convicted. Thus we vacate the judgment of conviction under counts five and six without the necessity of remanding for resentencing.

The judgment of conviction under counts five and six is vacated and the judgment of conviction under the other counts, affirmed.