**UNITED STATES ex rel. Angelo DeROSA, Plaintiff,**

v.

**SUPERIOR COURT OF NEW JERSEY et al., Respondents.**

**Civ. A. No. 74–84.**

United States District Court,
D. New Jersey.
July 3, 1974.

Cummins, Cummins, Dunn, Horowitz
& Pashman by Donald Horowitz, Hackensack, N. J., for plaintiff.

Joseph C. Woodcock, Jr., Prosecutor
by Theodore R. Carron, Asst. Prosecutor, Hackensack, N. J., for respondents.

## MEMORANDUM AND ORDER

LACEY, District Judge:

Petitioner seeks a writ of habeas corpus, alleging illegal detention by respondents within 28 U.S.C. § 2241 et seq., to wit, a three-year period of probation upon suspension of a 2–3 year New Jersey State prison term, and a $1000 fine, later suspended, the sentence imposed after conviction following jury trial of violating N.J.S.A. 2A:98–1. Petitioner thus is neither presently incarcerated nor in immediate danger of incarceration.

State remedies have been exhausted as to all asserted claims, same having been raised on direct appellate review in the Appellate Division, which by an unpublished opinion affirmed the conviction, and the New Jersey Supreme Court having dismissed, without opinion, petitioner's appeal on June 30, 1972. 28 U.S.C. § 2254; Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).[1] Additionally, a petition for writ of certiorari, filed in the United States Supreme Court, was denied, 409 U.S. 1040, 93 S. Ct. 523, 34 L.Ed.2d 489 (1972).

*Factual Background*

On March 24, 1970, the Bergen County Grand Jury returned an indictment charging petitioner and one Vincent Sol-

1. Petitioner claims prosecutorial misconduct at trial and abridgment of his privilege against compulsory self-incrimination by the State's introduction at trial of petitioner's sworn pre-trial statement.

lazzo with violating N.J.S.A. 2A:98–1 (h), which reads in pertinent part:

Any 2 or more persons who conspire:

\* \* \* \* \* \*

(h) to commit any act for the perversion or obstruction of justice or the due administration of the laws—

Are guilty of a conspiracy and each shall be punished . . . as for a misdemeanor.

Specifically, the indictment charged that Sollazzo on October 16, 1969 filed an application with the Division of Alcoholic Beverage Control (A.B.C.) to remove a disqualification from the right to possess a liquor license. The A.B.C. thereupon scheduled a hearing for January 7, 1970. At the hearing Sollazzo had the burden of proving to the A.B.C. that he had conducted himself as a law-abiding citizen for the last five years. In order to sustain such a burden, Sollazzo was notified to produce at least three witnesses who had known him for five years or more and who would be willing to testify under oath as to Sollazzo's good character and law-abiding conduct. Petitioner who was one of the witnesses produced by Sollazzo.

Petitioner testified at the A.B.C. hearing that he was the Chief of Police in South Hackensack, had known Sollazzo for more than ten years, had seen him once a week during the preceding five years, and knew his reputation in the community. Petitioner was then asked the following questions, the answers to which were later to be the basis of the indictment:

Q Have you in the past 5 years heard anyone speak of him in a derogatory manner?

A No.

Q In your opinion, is he now an honest, law-abiding person with a good reputation?

A Yes.

The State charged that these answers were knowingly and wilfully false. The State also asserted that on December 19, 1969, well prior to the A.B.C. hearing, petitioner became aware that the Prosecutor had executed a search warrant at the business establishment in which Sollazzo had an interest [the Jade East Motel]; and that in December 1969 petitioner knew Sollazzo was wanted by the Prosecutor for questioning concerning a gambling operation. Thus the State contended that Sollazzo and petitioner conspired to pervert and obstruct justice by having petitioner wilfully testify falsely at the A.B.C. hearing to the law-abiding character of Sollazzo; and it was on this charge that he was convicted.

The statement, which petitioner alleges was improperly obtained from him, and upon which the State heavily relied at trial, was made under the following circumstances. On March 19, 1970, a detective from the Prosecutor's office asked petitioner to come to that office, telling him that office was conducting an investigation of the South Hackensack Police Department and the Jade East Motel. Petitioner, responding to the telephone call, proceeded to the Prosecutor's office, and was ushered into an empty grand jury room where he was met by two assistant prosecutors, two detectives, a stenographer and a court reporter. Petitioner was then asked whether he was willing to give a statement under oath and he replied in the affirmative. Petitioner stated that he knew at least three days after the December 19, 1970 raid on the Jade East that there was a continuing investigation of Sollazzo by the Prosecutor's office. Petitioner admitted testifying before the A.B.C. on Sollazzo's behalf, but insisted that such testimony was given before he knew of the said raid. The fact is he testified on January 7, 1970, well after the raid. The statement was introduced at trial on the State's case over petitioner's objection.

■ A threshold issue which must be resolved before reaching the merits of petitioner's claims is whether petitioner is "in custody" within the meaning of 28 U.S.C. § 2241 et seq.

It is clear that to invoke the Great Writ one need not be physically detained in a penal institution. In Hensley v. Municipal Court, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973), the Supreme Court held that a person released in his own recognizance, pending appeal of his conviction, was sufficiently "in custody" for the purpose of seeking habeas corpus relief. The Court stated (411 U.S. at 350, 93 S.Ct. at 1574):

> [W]e have consistently rejected interpretations of the habeas corpus statute that would suffocate the writ in stifling formalisms or hobble its effectiveness with the manacles of arcane and scholastic procedural requirements.

While the petitioner in *Hensley* faced immediate incarceration if his appeals were not successful (which factor is not present in the matter *sub judice*), it is apparent that, because of the sentence imposed, petitioner suffers from a restraint not shared by the public generally. Jones v. Cunningham, 371 U.S. 236, 243, 83 S.Ct. 373, 9 L.Ed.2d 285 (1973). As in Walker v. North Carolina, 262 F. Supp. 102 (W.D.N.C.1966), aff'd., 372 F.2d 129 (4th Cir.), cert. denied, 388 U. S. 917, 87 S.Ct. 2134, 18 L.Ed.2d 1360 (1967), the threat of future imprisonment, if the conditions of probation are not complied with, is sufficient to bring petitioner within the meaning of the custody provision of 28 U.S.C. § 2241.

Petitioner alleges three bases in support of his petition. The last ground, that certain of the prosecutor's remarks were so prejudicial as to violate petitioner's due process rights under the Fourteenth Amendment, is without merit, and is at most mere trial error, lacking constitutional significance. *See* Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); United States v. Somers, 496 F.2d 723 (3d Cir. 1974). Petitioner's first and second grounds shall be discussed in reverse order.

*Miranda Question*

Petitioner claims a Fifth Amendment violation, asserting that the statement given by him to the officials of Bergen County was inadmissible at trial since it was taken in violation of the holding in Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966), no *Miranda* warnings having been given him prior to questioning. *Cf.* Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974).

*Miranda* is triggered only by custodial interrogation, by "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612. Thus, the initial question to be asked is whether petitioner was "in custody."

It is clear that to be "in custody" in the *Miranda* sense does not necessitate a formal arrest nor does it require physical restraint in a police station. *See* Orozco v. Texas, 394 U.S. 324, 326, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969). What is not so clear is at what point one, not formally arrested, is deemed "in custody" for the purposes of *Miranda*.

In United States v. Hall, 421 F.2d 540 (2d Cir. 1969), cert. denied, 397 U.S. 990, 90 S.Ct. 1123, 25 L.Ed.2d 398 (1970), it was held (421 F.2d at 545):

> . . . in the absence of actual arrest, something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning which indicates that they would not have heeded a request to depart or to allow the suspect to do so.

Similarly, the Ninth Circuit in United States v. Bekowies, 432 F.2d 8 (9th Cir. 1970), held that a defendant will be considered to be in custody for *Miranda* purposes:

> . . . if the actions of the interrogating officers and the surrounding

circumstances, fairly construed, would reasonably have led him to believe that he could not leave freely. 432 F. at 12.

In Iverson v. State of North Dakota, 480 F.2d 414 (8th Cir. 1973), the defendant had been subpoenaed by the State Attorney's office to report to a police station for the purpose of giving testimony concerning his knowledge of certain criminal occurrences. The State Attorney asked the defendant both general and specific questions regarding the crimes under investigation and the defendant responded under oath. In holding that the defendant therein was not in custody, the Eighth Circuit observed (480 F.2d at 423):

> In the instant case, although Iverson was interrogated at the police station and interrogated by the detectives when the state's attorney left, he nevertheless was never restrained or arrested and upon completion of his testimony was informed that he had a right to leave. His total interrogation lasted only twenty minutes.

■■ As in *Iverson,* the petitioner here was interrogated by the Bergen County Prosecutor's office. The questions ranged from general to specific, and the interrogation lasted about twenty minutes. At the end of his statement, petitioner was permitted to depart the Prosecutor's office unmolested. Additionally, petitioner was not subpoenaed to attend the interrogation but rather responded to a request to present himself. Furthermore, he was "asked" if he would like to give a statement, to which he affirmatively responded. The prosecutors who interrogated petitioner at no time employed words or conduct which evidenced that they would not have permitted petitioner to stop the interrogation and leave. United States v. Hall,

*supra.* Nor was there any indication that petitioner believed that he could not leave freely. United States v. Bekowies, *supra.* Petitioner's own testimony belies custody. Petitioner was asked on cross examination the following questions and gave the following answers (R 1b 208):

Q. Referring to the date of March 19, 1970, Chief, you received a communication from then Lieutenant Graber requesting you to come to the Prosecutor's Office, isn't that correct?

A. That's right.

Q. And you came freely and willingly, did you not?

A. Yes, I did.

&ast; &ast; &ast; &ast; &ast; &ast;

Q. Were any promises or any threats of any type made in your direction to cause you to give us a statement?

A. No.

In short, nowhere is there any assertion that petitioner was under arrest nor are there any acts or statements by the prosecutors in the papers before me that would indicate that the prosecutors would not have permitted petitioner the right to depart without giving a statement. *See* Steigler v. Anderson, 496 F. 2d 793 (3d Cir. 1974); United States ex rel. Sanney v. Montanye, 500 F.2d 411 (2d Cir. 1974). Nor is it without significance that petitioner was himself a police officer who, it is certain, knew his rights and what "custody" involved.

Clearly then, the petitioner was not "in custody or otherwise deprived of his freedom of action in any significant way." The trial court, after full hearing out of the jury's presence, found no *Miranda* violation (R 1b 367–370); and the Appellate Division affirmed. This Court agrees with that finding.[2]

2. No evidentiary hearing is required on the *Miranda* issue. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); 28 U.S.C. § 2254(d); *cf.* United States ex rel. Oliver v. Vincent, 498 F.2d 340 (2d Cir. 1974). It is well settled that where factual issues in state criminal proceedings are resolved after a full and fair hearing, a defendant is not entitled to another hearing on the same issues in a federal habeas corpus petition, Wade v. Yeager, 377 F.2d 841 (3d Cir. 1967), cert. denied, 393 U.S. 893, 89 S.

### Garrity Question

■ We now turn to the second of petitioner's Fifth Amendment-based claims. Petitioner asserts that, by reason of Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1966), his statement was involuntarily given.

In *Garrity*, the Attorney General began an investigation into the alleged fixing of traffic tickets. The *Garrity* defendants had been warned that they were required to answer all questions directed to them or face dismissal from their governmental offices by virtue of the "forfeiture of office" statute, N.J.S. A. 2A:81–17.1, the coercive force of which petitioner alleges is applicable here. In *Garrity* the defendants had given statements which were subsequently used against them in the trial of indictments similar to the instant indictment (in *Garrity*, conspiracy to obstruct the administration of the traffic laws). The trial court held the statements to be voluntary despite the forfeiture-of-office statute. The New Jersey Supreme Court, having certified the matter without determination by the Appellate Division, affirmed.

On certiorari, the United States Supreme Court, per Mr. Justice Douglas, reversed. The Court held (385 U.S. at 497, 498, 87 S.Ct. at 618):

> The choice given petitioners was either to forfeit their jobs or to incriminate themselves. The option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or remain silent . . . . Where the choice is "between the rock and the whirlpool," duress is inherent in deciding to waive one or the other.

Ct. 218, 21 L.Ed.2d 173 (1968), provided the decision of the state court is fairly supported by the record, United States ex rel. Shank v. Commonwealth of Pennsylvania, 461 F.2d 61 (3d Cir. 1972). Petitioner received a fair and adequate hearing as to the *Miranda* point at the trial level; there is a full and adequate record, with findings, sup-

If there was any indication that petitioner here testified due to fear concerning the loss of his job, this Court would not hesitate to issue the writ which petitioner seeks. However, as Justice Douglas noted (385 U.S. at 496, 87 S.Ct. at 618):

> We agree with the New Jersey Supreme Court that the forfeiture-of-office statute is relevant here only for the bearing it has on the voluntary character of the statements used to convict petitioners in their criminal prosecutions.

The trial court, as has been noted, conducted a hearing on the voluntariness of petitioner's statement, which covered both *Garrity* and *Miranda* issues (R 1a 331). The hearing consisted of the direct and cross examination of Lieutenant Graber, who was present when petitioner gave his statement. Graber testified that he had telephoned petitioner and requested that he come to the Prosecutor's office to answer some questions (R 1a 332). Graber further testified that petitioner was not in custody, nor was he a suspect; and that petitioner made no objection to giving a statement (R 1a 333). Graber testified on cross examination that petitioner was not subpoenaed, that his statement was taken in the grand jury room, and that he did not sign the statement (R 1a 335). The above constituted the entire record on the evidentiary hearing, exclusive of legal argument.

In announcing his decision, the trial judge observed and petitioner's counsel responded as follows (R 1a 351–352):

> As of now, I can't on the face of it say that this defendant feared he would lose his job and therefore the testimony should be excluded.

portive of the trial court's decision. Hence, there is a presumption of correctness. Accordingly, I defer to the state court's findings of facts. As indicated above, I find as a matter of law that the *Miranda* warnings need not have been given to petitioner. Townsend v. Sain, *supra*.

\* \* \* \* \* \*

the next question, as I see it is that what I have now in no way, as I see it, and I so find, indicates that he was fearful of losing his job if he didn't testify under the Garrity rule or under the statute or under Falco.

\* \* \* \* \* \*

I take it you are not putting him [petitioner] on for this purpose or for any purpose in this hearing.

Mr. Major [petitioner's trial counsel]

No, sir.

Thus it is plain that, afforded the opportunity to do so, petitioner, during the evidentiary hearing, presented no evidence whatsoever from which it could be concluded that he had appeared at the Prosecutor's office, and had given his statement, because he feared loss of his job if he refused to do so.

Furthermore, petitioner testified in his own behalf before the jury at the trial. His direct testimony reflects nothing which indicates a *Garrity*-fear (R 1b 190–208). On cross examination, the following questions and answers appear (R 1b 208, 209):

Q. And you came [to the Prosecutor's Office] freely and willingly, did you not?

A. Yes, I did.

\* \* \* \* \* \*

Q. Were any promises or any threats made in your direction to cause you to give us a statement?

A. No.

Mr. Major: I will stipulate on the record that neither Mr. Dilts nor anyone from the Prosecutor's Office made any threats or promises to the Chief.

Q. And do you agree, for the record, Chief, that the statement you gave was completely voluntary by you?

A. At the time, yes (R 1b 209).

Petitioner submitted no request to charge on the *Garrity* issue nor did he object to the absence of such a charge (*see* R 1b 349, 368).

The trial record as thus presented to this Court contains no evidence that the statement was involuntary on *Garrity* grounds. Thus this Court, like the trial court, was left to decide this issue, insofar as the trial record is concerned, solely on the unsupported assertion of the petitioner that it was fear of job forfeiture which induced his statement. Even the petition filed in this Court, over the signature of petitioner's counsel, simply refers to a "violation of [petitioner's] right against self-incrimination under the Fifth Amendment to the Constitution of the United States." (Pet'n. para. 3). Only in the supporting memorandum is the *Garrity* claim specifically mentioned, and only here is it claimed, for the first time, that petitioner was coerced by *Garrity* into making his statement.

Concerned by this record deficiency, this Court *sua sponte* raised the issue of "deliberate by pass". As noted in Fay v. Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963):

> We therefore hold that the federal habeas judge may in his discretion deny relief to an applicant who has deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies.

In explanation the Court noted (372 U.S. at 439, 83 S.Ct. at 849):

> . . . If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts

bearing upon the applicant's default. . . . A choice made by counsel not participated in by the petitioner does not automatically bar relief.

*See also* Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965).

In United States ex rel. Gockley v. Myers, 378 F.2d 398 (3d Cir. 1967), cert. denied, 396 U.S. 847, 90 S.Ct. 96, 24 L. Ed.2d 96 (1969); a case somewhat similar to the instant matter on the narrow point of waiver, petitioner asserted that certain statements taken from him by the police were involuntary and accordingly the introduction of such statements at his trial violated his Fifth Amendment rights under *Miranda.* Judge Hastie noted that before such evidence was introduced the state trial judge specifically inquired of defense counsel whether there were any objections to its admission. Defense counsel declined to object. Upon this record, the court was of the opinion that the parties should be given the opportunity to supplement the record and have the issue of waiver decided since:

> . . . Waiver of constitutional right is a federal question upon which a federal court must make an independent decision [378 F.2d at 400].

Pursuant to the teaching of Fay v. Noia and *Gockley,* this Court held an evidentiary hearing, Townsend v. Sain, *supra,* originally on the narrow issue of whether petitioner had participated in his trial counsel's decision to refrain from adducing *Garrity*-fear testimony, but subsequently broadened to include the actual underlying issue of voluntariness itself. At that hearing, held on two separate dates, petitioner testified, as did as well his trial counsel, James A. Major, Esq., a respected and experienced member of the New Jersey Bar, who was called as a Court witness, enabling both parties to examine him as if on cross examination.

Petitioner having waived the attorney-client privilege, Mr. Major was able to testify freely about all aspects of his representation of the petitioner. His testimony, which I find credible in all respects, and accept, was that petitioner was, at all critical times, unaware of the forfeiture of office statute (C 2–16, 23); that his first knowledge thereof came from Mr. Major, whom he first retained after being indicted; and that petitioner never advised Mr. Major that it was out of fear of job loss that he had cooperated with the Prosecutor by appearing and giving a statement (C 2–21, 23, 24, 28), either after being informed of the statute (C 2–28), or after hearing, at trial, the court's ruling on the *Miranda* and *Garrity* issues (C 2–34, 37).

Mr. Major further testified, and I so find, that petitioner told Mr. Major that he appeared at the Prosecutor's office because the officials there were his friends and because he had nothing to fear since "he ran a clean town." (C 2–15, 16, 17, 21).

Mr. Major also testified, and I again accept his testimony and so find, that he had discussed with petitioner his decision that petitioner not testify during the evidentiary hearing and that petitioner acquiesced in this decision (C 2–7, 8). I find further, based upon Mr. Major's testimony, that such a decision was based on the absence of any truthful evidence in his possession to rebut the state's witness, Lieutenant Graber (C 2–30, 34, 37). Mr. Major testified that had such evidence been available, his decision not to call his client would have been different (C 2–34, 37).

Petitioner's testimony at the hearing before this Court was at odds with Mr. Major's in several material respects. Thus he testified that his trial counsel, Mr. Major, never discussed with him the decision not to present petitioner's testimony during the evidentiary hearing (C 1–4); and that he presented himself at the Prosecutor's office because he felt that he was obliged to do so under *Garrity* (C 1–7, 22), and, moreover, that he had advised Mr. Major to this effect (C 1–22).

Petitioner further testified before this Court that *Garrity* was in his mind at the time he gave his statement (C 1–12) and at the time of his trial (C 1–12). On the other hand, he asserted that had *Miranda* warnings been given, he would, notwithstanding *Garrity*, have refused to give a statement (C 1–27); and, despite this ever present awareness of *Garrity*, he stated that he testified truthfully at trial when he stated that the statement was "voluntary" (C 1–31, 33). Flatly contradicting Mr. Major, petitioner testified before this Court that, after the trial judge decided the *Garrity* issue against him, he informed Mr. Major that the decision was erroneous (C 1–25, 27), although, it is again noted, he was later to testify at trial that the statement was voluntary (C 1–31, 32, 33).

The testimony of Mr. Major, as has been stated, is deemed credible and is accepted; and, to the extent petitioner's testimony is inconsistent therewith, I reject petitioner's version of events. I find that petitioner was unaware of the forfeiture-of-office statute at the time he presented himself at the Prosecutor's office and gave his statement. Additionally, I find that petitioner appeared at the Prosecutor's office and gave the March 19 statement, not because he feared loss of his job, whether under *Garrity* or for any other reason, but rather because he thought that the prosecutors were his "friends" and that he had nothing to fear or hide. It is interesting to note that while petitioner alleges a *Garrity*-like coercion (which fact is contradicted by petitioner's own trial testimony), petitioner unequivocally stated in this Court that, had the *Miranda* warnings been given, he would have refused to give any statement, this notwithstanding his professed *Garrity*-concern.

My findings are buttressed by the fact that petitioner testified at trial that his statement was voluntary, after allegedly telling his trial counsel that the trial judge was in error in deciding that said statement was voluntarily given.

I further find that petitioner never mentioned to his trial counsel that he feared the loss of his position if he refused to give a statement, even after being informed by counsel of the forfeiture-of-office statute.[3]

I find, therefore, that Mr. Major, trial counsel for petitioner, had no evidence he could have presented in support of his *Garrity* claim. Hence, rather than an issue of "by pass" being implicated by this case, I find that trial counsel made the only decision possible (in arguing the law rather than the facts), which was both consistent with his duty to his client and his duty as an officer of the court. I finally find that petitioner acquiesced in Mr. Major's decision.

Accordingly, it is on this 3d day of July, 1974

Ordered that the petition of Angelo DeRosa for a writ of habeas corpus be and the same is hereby denied.

There is no probable cause for appeal.

3. My acceptance of Mr. Major's testimony, and rejection of petitioner's, is based not only upon the foregoing analysis of the objective factors in the record but also upon the application of the recognized tests a court must use at a bench trial for ascertaining credibility. *See* Joseph v. Donover Co., Inc., 261 F.2d 812, 819 et seq. (9th Cir. 1959). Thus mindful during the testimony of my ultimate duty of fact finding, I scrutinized carefully and searchingly not only what the witnesses said but how they said it. Mr. Major impressed me as speaking truthfully and forthrightly and as an attorney who, in the light of his vast experience, would have advised the petitioner to testify at trial as to his *Garrity*-fear if it existed. On the other hand, the petitioner testified in a manner which led me to doubt his credibility, both in how he answered and what he said when he answered questions. Thus my subjective reaction lead me to the same conclusion as the analytical reasons hereinabove set forth, that Mr. Major was telling the truth and petitioner was not.