**UNITED STATES of America, Plaintiff,**

v.

**Joseph C. PARLAVECCHIO and Alfonse R. Rossi, Defendants.**

**Crim. No. 95–203.**

United States District Court, D. New Jersey.

Oct. 20, 1995.

789

Carlton E. Wessel, James B. Nobile, Assistant U.S. Attorneys, Newark, NJ, for Plaintiff.

Theodore V. Wells, Jr., Bruce S. Rosen, Lowenstein, Sandler, Kohl, Fisher & Boylan, Roseland, NJ, for Defendant Parlavecchio.

Lawrence S. Lustberg, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, NJ, for Defendant Rossi.

WOLIN, District Judge.

Before the Court are various pre-trial motions brought by defendants Joseph C. Parlavecchio ("Parlavecchio") and Alfonse R. Rossi ("Rossi"). Both defendants move to dismiss Count 28 of the Indictment (Travel Act violation alleging use of the mails to promote unlawful activity) under Federal Rule of Criminal Procedure 12(b)(2) on the ground that it fails to allege an essential element of the crime charged. They also move for a bill of particulars with regard to Counts 29 through 40 of the Indictment (money laundering) on the ground that these counts fail to set forth the specified mail fraud offenses as to which each money laundering allegation relates.

Finally, Parlavecchio moves to dismiss Count 41 of the Indictment (obstruction of justice) on the ground that it fails to provide him with sufficient notice of the allegations against him. In the alternative, Parlavecchio moves for a bill of particulars on this count on the same ground.

The Court heard oral argument on October 20, 1995. For the reasons set forth below, the Court will grant defendants' motion to dismiss Count 28 of the Indictment but will deny the remaining motions.

## BACKGROUND

On April 28, 1995 a federal grand jury indicted defendants, charging that they established a corporation known as Mutual Investment Associates, Inc. ("Mutual") to purchase a building in Newark, New Jersey (the "Building") which Mutual later leased to defendants' employer, the Board of Education of the City of Newark (the "Board"), for use as an elementary school. The Indictment further alleges that, once the Board perceived a conflict of interest and insisted that defendants divest themselves of any interest in the Building, defendants "arranged a

scheme to conceal their interest" in Mutual and in the Building (Indictment p. 2, ¶ 4(f)). Defendants allegedly represented that they had relinquished their interest in Mutual and that they had no interest in any business which was a party to a contract with the Board, when in fact they merely purported to sell their shares in Mutual to relatives and took back a mortgage, thereby continuing for a number of years to receive the rental payments the Board continued to pay to Mutual.

The Indictment charges each defendant with one count of conspiracy in violation of 18 U.S.C. § 371, twenty-six counts of mail fraud in violation of 18 U.S.C. § 1341, and one count of use of the mails to promote unlawful activity in violation of the Travel Act, 18 U.S.C. § 1952(a)(3). It charges Parlavecchio with five counts and Rossi with four counts of money laundering under 18 U.S.C. § 1956(a)(1)(B)(i), and Parlavecchio with one count of obstruction of justice in violation of 18 U.S.C. § 1503.

## DISCUSSION

### I. Dismissal of the Travel Act Count

Count 28 of the Indictment alleges a violation of the Travel Act predicated upon an alleged "bribery" offense under N.J.S.A. 2C:27–7 (the "New Jersey statute"). Defendants move to dismiss Count 28 on two grounds: (1) that the Indictment does not state a claim under the New Jersey statute; and (2) that even if defendants violated the New Jersey statute, their conduct cannot serve as a predicate act under the Travel Act because it does not constitute "generic" bribery as required by the federal statute.

Under the Travel Act, a person commits a crime when he or she

> ... uses any facility in interstate or foreign commerce, including the mail, with intent to—(1) distribute the proceeds of any unlawful activity; or (2) commit any crime of violence to further any unlawful activity; or (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3)....

18 U.S.C. § 1952(a) (West 1986). "Unlawful activity" includes, among other things, "extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States." 18 U.S.C. § 1952(b) (West 1986). The government alleges "bribery" as the predicate act for its Travel Act charge.

### A. Defendants' Argument that the Conduct Alleged Does Not Violate the New Jersey Statute

The government alleges that defendants violated the Travel Act by committing bribery in violation of the laws of New Jersey, specifically the New Jersey statute. Defendants argue that even if the government's allegations are true, the alleged conduct would not violate the New Jersey statute and would therefore not violate the Travel Act. The New Jersey statute reads:

> A public servant commits a crime if he knowingly, directly or indirectly, receives any benefit in connection with the furnishing to or for the government of any goods, supplies, property or services for which the agreement or contract is made, or the expense or consideration paid, by the branch, subdivision or agency which employs the public servant.

N.J.S.A. 2C:27–7.

Tracking the New Jersey statute, Count 28 alleges that defendants, over a fifteen-year period during which they were employed by the Board, knowingly, willfully, directly and indirectly received a benefit, namely monies in connection with the Board's lease of the Building, in connection with the furnishing to and for the Board of property, namely the lease of the Building, for which the Board made the agreement and contract and paid the expense and consideration. It further alleges that defendants knowingly and willfully used the United States mails to distribute the proceeds of this unlawful activity and with the intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of this unlawful activity.

Defendants argue that the New Jersey statute "proscribes conduct not at issue here, in which, as with bribery, a public official reaps a private gain for the performance of his official duties." (Defendants' Br. p. 18) They point to the title of the statute, "Compensating Public Servant for Assisting Private Interests in Relation to Matters Before Him," as evidence that the statute aims at situations in which a public official assists the private interests of a third party "briber" through conduct of his *official duties* (Defendants' Br. p. 19) rather than situations where, as here, defendants have allegedly simply assisted their own interests through actions completely outside the scope of their official duties. Defendants also point out that the New Jersey statute is based upon Model Penal Code § 240.6, a traditional bribery provision.[1]

The Court finds the New Jersey statute somewhat unclear and finds defendants' arguments against its applicability to their alleged criminal conduct to be colorable.[2] As set forth below, however, even if the conduct alleged in Count 28 violates the New Jersey statute it cannot form a predicate act under the Travel Act. It is therefore unnecessary for the Court to pass on the applicability of the New Jersey statute and, given the absence of guidance to date from the courts of New Jersey on the issue, this Court declines to do so.

**B. Defendants' Argument that the Conduct Alleged Does Not Violate the Travel Act**

To serve as a predicate act under the Travel Act, conduct must be not merely criminal under the laws of the state in which committed or of the United States; it must also constitute "extortion, bribery or arson." 18 U.S.C. § 1952(b).

■ Congress did not define the terms "extortion," "bribery" or "arson" as used in the Travel Act, but case law has established that these terms are to be read "generically," and that the "generic" definitions of these crimes may be broader than their strict common law definitions. *Perrin v. United States*, 444 U.S. 37, 49, 100 S.Ct. 311, 317, 62 L.Ed.2d 199 (1979) (bribery involving private employees is predicate act under Travel Act even though bribery at common law was limited to public officials); *United States v. Dansker*, 537 F.2d 40, 47 (3d Cir.1976) (public official's acceptance of payment in exchange for influencing zoning decision constitutes generic bribery even if defendant's conduct fell outside realm of his official duties and therefore would not have constituted bribery at common law); *United States v. Michael*, 456 F.Supp. 335 (D.N.J.1978), *affirmed*, 605 F.2d 1198 (3d Cir.1979) (commercial bribery constitutes "bribery" under Travel Act).

Another line of cases has established that conduct may be generic bribery for Travel Act purposes even if the state where it was committed defines the crime differently. In *United States v. Nardello*, 393 U.S. 286, 295, 89 S.Ct. 534, 539, 21 L.Ed.2d 487 (1969), the Supreme Court held that a violation of Pennsylvania's blackmail statute properly served as a Travel Act predicate act because the indictment charged conduct "generally known as extortionate." In language that has been frequently quoted, the Supreme Court added that the relevant inquiry "is not the manner in which States classify their criminal prohibitions but whether the particular State involved prohibits the extortionate

1. Defendants also point to language in the Commentary to a prior version of the New Jersey statute which suggests that, at least at that time, the provision did not reach conduct such as that alleged in Count 28. In light of the amendments to the statute since that time, the Court does not consider this Commentary persuasive on the issue for which defendants cite it.

2. The Court also notes that defendants' alleged conduct appears to be covered by another criminal provision enacted at the same time the New Jersey statute at issue was amended, namely N.J.S.A. 2C:30–2, proscribing "official misconduct." The predecessor to this statute has been applied to a public official who held an undisclosed interest in a venture and, through his office, acted in favor of that interest. *State v. Furey*, 128 N.J.Super. 12, 318 A.2d 783 (A.D. 1974). *Furey* is still cited in cases applying N.J.S.A. 2C:30. *See State v. Maioranna*, 225 N.J.Super. 365, 369, 542 A.2d 510, 512 (A.D. 1988), *remanded on other grounds*, 240 N.J.Super. 352, 573 A.2d 475 (A.D.1990).

activity charged." *Id.,* 393 U.S. at 296, 89 S.Ct. at 539.

In *United States v. Forsythe,* 560 F.2d 1127, 1137 & n. 19 (3d Cir.1977), the Third Circuit applied *Nardello* to find that Pennsylvania's corrupt solicitation statute constituted a predicate act of bribery under the RICO statute where the statute proscribed attempts to influence a public officer in the discharge, performance or nonperformance of his or her office by promise of anything of value. The court stated that "alleging a state violation which falls within the generic category of the predicate offense is adequate to charge a violation of the Travel Act." *Id.* at 1137; *see also United States v. Garner,* 837 F.2d 1404, 1417 (7th Cir.1987) (holding Illinois official misconduct statute, which "proscribes the unlawful acceptance of a payment knowing that it was given to reward past or future favors," to be predicate act of generic bribery under RICO statute); *United States v. LeFevour,* No. 84 CR 837, 1985 WL 834 (N.D.Ill.) (same, noting that "it is the nature, not the nomenclature of a state offense which determines whether it is included in a generic category recognized by federal law").

This case presents the converse of the one addressed in the *Nardello* line of cases: here it is the *government* that points to the *label* of "bribery" on the New Jersey statute [3] while *defendants* focus on the *conduct,* arguing that although generic "bribery" encompasses more than it did at common law, it still does not encompass the conduct alleged here, regardless of how New Jersey classifies it.

■ Clearly, the label a state chooses for a crime cannot control its classification under the Travel Act; if it did, the same act could be a federal crime in one state but not in another, and this was not the intent of the Travel Act. *See Taylor v. United States,* 495 U.S. 575, 592, 110 S.Ct. 2143, 2155, 109 L.Ed.2d 607 (1990), *citing Nardello,* 393 U.S. at 293–94, 89 S.Ct. at 538–39. Thus, courts must look beyond the label a state has affixed to a crime even where it matches the classification sought by the government; the proper inquiry is still whether or not "the acts for which [defendants] have been indicted fall within the generic term ... used in the Travel Act." *Nardello,* 393 U.S. at 296, 89 S.Ct. at 539.

Defendants argue that "the structure of a bribery transaction is, in essence, that a donor provides money to a donee with at least the expectation of realizing some improper advantage" (Reply Br. p. 5), emphasizing the lack of a traditional donor/donee relationship in this case.[4]

■ This Court agrees that the traditional, popular definition of bribery does not encompass defendants' alleged conduct. Although it is not a necessary element to the crime that all the "players" in an attempted bribe intend to participate, the verb "to bribe" is a transitive one; a briber bribes, or attempts to bribe, or plans to bribe *someone.*

Defendants' alleged conduct simply does not fit this model, even assuming all the government's allegations to be true: they have not acted as bribers by paying someone to exert improper influence for their benefit, nor have they accepted a benefit from anyone in exchange for any action they have taken. The transaction at issue was between defendants and the Board, and it is impossi-

---

3. The New Jersey statute is not actually labelled "bribery"; rather, it is contained in a section of a chapter entitled "Bribery and Corrupt Influence" and its title is "Compensating public servant for assisting private interests in relation to matters before him." N.J.S.A. 2C:27–7.

4. The government repeatedly stresses that "no actual influence or quid pro quo need be proven" to establish generic bribery. It seems to argue that, since the Second Circuit has held N.J.S.A. 2C:27–6 to be a predicate act under the Travel Act in *United States v. Walsh,* 700 F.2d 846 (2d Cir.1983), and since that statute requires no actual influence or quid pro quo, the New Jersey statute at issue here is also a predicate act because it, too, requires no actual influence or quid pro quo. This logic misses defendants' point. As this Court understands defendants' argument, it does not focus on the lack of actual influence or quid pro quo *per se,* but rather on the lack of any potential or opportunity for actual influence or a quid pro quo because of the lack of a traditional donor and a traditional donee. The statute construed in *Walsh* is a traditional bribery statute in that it contemplates a transaction, whether completed or mutually intended or not, between two parties.

ble to assign the traditional roles of "briber" and "bribee" between them. As the government itself frames the issue, "[i]n essence, the Indictment charges the defendants with: (a) lying in order to continue to obtain rent payments from the [Board] ... and (b) concealing their interest in the building." (Opp.Br. p. 2) Such conduct simply does not fit the definition, in the mind of an ordinary person, of the term "bribery."

The government, however, points to a Third Circuit holding that "the generic description of bribery is 'conduct which is intended, at least by the alleged briber, as an assault on the integrity of a public office or an official action." *Rose v. Bartle*, 871 F.2d 331, 362 (3d Cir.1989), *quoting Forsythe*, 560 F.2d at 1137 & n. 23 (quoting *Dansker*, 537 F.2d at 48). Standing alone, this statement would seem to make "bribery" out of any conduct whatever which could be construed as an intended "assault on the integrity of a public office or an official action." This could quite literally include nearly all public misconduct by a government official, whether it be sexual harassment, embezzlement, or any other action which would reflect poorly on the integrity of his or her office, no matter how far afield from a traditional understanding of the term "bribery."

In context, the quoted statement means something else. In *Dansker*, from which the quotation originates, the court was wrestling with the question of what level of "corrupt intent" was required on the part of a public official accused of bribery under a statute which seemed to prohibit the acceptance by anyone of any benefit in exchange for an agreement to influence any official action in any manner. Recognizing that such a rule would violate the First Amendment, the court found instead that the statute at issue "was designed to reach only that conduct which has been the traditional concern of the law of bribery—conduct which is intended, at least by the alleged briber, as an assault on the integrity of a public office or an official action." *Dansker*, 537 F.2d at 48.

Although several courts have stated or implied that the quoted language sets forth a generic definition of bribery, they have done so either in the context of examining the *mens rea* required for generic bribery, *United States v. Kaye*, 586 F.Supp. 1395, 1399 (N.D.Ill.1984) (defendant argued that he did not commit bribery since he never actually passed money to public official; court cites *Dansker* for proposition that intent of briber can be enough); *Walsh*, 700 F.2d at 853 (defendant argued that he paid public official merely to expedite certain processing and therefore lacked *mens rea* for bribery; court rejects this argument, citing *Dansker*), or in situations in which the alleged predicate act clearly fell within the traditional, popular understanding of "bribery." *See Rose*, 871 F.2d at 363 (plaintiffs properly alleged generic bribery where they charged that defendants offered to benefit certain public officials' political careers and simultaneously threatened those careers in order to persuade the officials to institute groundless legal proceedings against plaintiffs); *Garner*, 837 F.2d at 1419 (see *supra* p. 792); *Forsythe*, 560 F.2d at 1137 n. 23 (see *supra* p. 792).

Nowhere has the *Dansker* language been used to expand the generic definition of bribery to include conduct which never even contemplated a traditional briber/bribee relationship. Thus, although the conduct alleged by the government in this case may constitute an "assault on the integrity of a public office" in a certain sense, this does not make it bribery under *Dansker*.

Similarly, the government advances *United States v. Biaggi*, 853 F.2d 89, 101 (2d Cir.1988), for the proposition that a statute can serve as a predicate act of bribery under the Travel Act if it "prohibits the acceptance of a payment or benefit by a public employee that would lead to the inefficient management of public affairs." (Opp.Br. p. 13) Again, the government urges the Court to expand the definition of generic bribery based upon a brief quotation taken out of context. The quoted language comes from a section of the *Biaggi* opinion in which the court was, once again, addressing the level of corrupt intent required for generic bribery— this time under the federal "Bribery of public officials and witnesses" statute, 18 U.S.C. 201.

One section of the federal statute proscribes bribery with "corrupt intent to influence;" another prohibits paying gratuities to public officials "for or because of any official act performed or to be performed by such public official." *Id.* The *Biaggi* court rejected the defendant's contention that only the "corrupt intent to influence" section constituted generic bribery for Travel Act purposes, holding:

> All sections of the bribery statute are aimed at preventing the evil of allowing citizens with money to buy better public service than those without money ... [e]ven if corruption is not intended by either the donor or the donee, there is still a tendency in such a situation to provide conscious or unconscious preferential treatment of the donor by the donee, or the inefficient management of public affairs.

*Biaggi*, 853 F.2d at 101 (citation omitted). Clearly, *Biaggi* construes a statute which fits quite comfortably under the traditional rubric of bribery, and the language the court used has little applicability to the situation at bar, where there is neither a "donor" nor a "donee."

Accordingly, this Court finds that none of the cases cited by the government alter its finding that the conduct alleged in Count 28 simply does not amount to "bribery" in its ordinary, traditional sense.

This holding comports with the purposes of the Travel Act as stated in its legislative history. As set forth in *Nardello*, 393 U.S. at 290–92, 89 S.Ct. at 537–38 (citations omitted), the Travel Act was part of the Kennedy Administration's effort to combat organized crime,[5] specifically by aiding local law enforcement officials stymied by persons who conducted their illegal activities outside their state of residence. The Travel Act "reflects a congressional judgment that certain activities of organized crime which were violative of state law had become a national problem." *Id.*, 393 U.S. at 292, 89 S.Ct. at 538. Although the Travel Act undoubtedly reaches conduct unrelated to organized crime, allegations of what is essentially garden variety misuse of public office such as those contained in Count 28 are not the sort of "national problem" that Congress sought to address in the Travel Act. Accordingly, the Court will grant defendants' motion to dismiss the Travel Act count.

## II. Motion to Dismiss Obstruction of Justice Count

Count 41 of the Indictment (Obstruction of Justice) charges that Parlavecchio:

> On or about March 17, 1995, in the District of New Jersey, ... knowingly, willfully and corruptly endeavored to influence, obstruct and impede the due administration of justice, namely, a grand jury investigation being conducted in the United States District Court for the District of New Jersey [i]n violation of Title 18, United States Code, Sections 1503 and 2.

Parlavecchio asserts that this Court should dismiss Count 41 as impermissibly vague because it fails to allege sufficient facts to apprise him of what he must defend himself against.

Parlavecchio complains that Count 41 fails to inform him (1) how he is alleged to have influenced, obstructed and impeded the grand jury investigation; (2) whether he is alleged merely to have attempted to commit obstruction of justice or to have actually committed it; (3) the identity of persons, if any, whose grand jury testimony he is alleged to have interfered with, and whether it is alleged that he intended to influence such testimony, prevent it, or something else; and (4) whether his liability is as a principal or as an aider and abettor and, if the latter, how he allegedly aided or abetted the alleged crime.

An indictment count is sufficient if it (1) contains the elements of the offense charged; (2) fairly apprises the defendant of the charge he or she must be prepared to meet and defend; and (3) enables the defendant to plead an acquittal or conviction in the

---

5. This explains the predicate acts of extortion and bribery, as well as arson, which Congress added in 1965 on the suggestion of the Department of Justice that organized crime was generating revenues by using arson to collect insurance proceeds. *Id.*, 393 U.S. at 291 n. 8, 89 S.Ct. at 537 n. 8.

event of a subsequent prosecution for the same offense. *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir.1989) (citations omitted); *United States v. Lipari*, CR No. 92–164, 1992 WL 165799, *2–3 (D.N.J.) (Wolin, J.) (citation omitted). The count may simply track the statutory language "so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." *Rankin*, 870 F.2d at 112 (citations omitted). There is no special pleading rule for obstruction of justice counts. *Id.*

■ The elements of the crime charged in Count 41 are "(1) endeavoring to (2) corruptly (3) influence ... the due administration of justice." *Id.*; 18 U.S.C. 1503. Clearly, Count 41 sufficiently alleges the elements of the crime charged. It also alleges further factual orientation: that the charge is directed at a grand jury investigation in the United States District Court for the District of New Jersey, that the crime took place on or about March 17, 1995, and that it took place in the District of New Jersey. These additional facts adequately apprise Parlavecchio of the nature of the charge against him and would allow him to invoke double jeopardy in the event of a subsequent prosecution. Accordingly, Parlavecchio's motion to dismiss Count 41 is denied.

### III. Motions for Bills of Particulars

As an alternative to his motion to dismiss the obstruction of justice count of the Indictment, Parlavecchio requests a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f) on that charge, also on the ground of vagueness. In addition, both defendants seek a bill of particulars on the money laundering counts of the Indictment on the ground that the government has not set forth "the specified mail fraud offenses as to which each money laundering allegation relates." (Defendants' Br. pp. 22–25)

■ Bills of particulars serve a function "analogous to an indictment," that is, providing the defendant with notice of the charges against him. *United States v. Eisenberg*, 773 F.Supp. 662, 689 (D.N.J.1991). They are designed:

to identify with sufficient particularity the nature of the charge pending against the defendant, thereby enabling him to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.

*Id.* (citations omitted). A bill of particulars should be granted when the indictment appears too vague to inform the defendant fairly of the charge against him. *United States v. Addonizio*, 451 F.2d 49, 64 (3d Cir.1971) (citation omitted).

■ However, although "Rule 7(f) is construed liberally, it does not permit a defendant to receive wholesale discovery of the Government's evidence," *Eisenberg*, 773 F.Supp. at 689 (citations omitted), and "[i]n recognition of the Government's interest in not being forced to divulge the entirety of its case prior to trial," a court need not grant a request where it would serve merely to provide the defendant with a detailed pre-trial disclosure of the Government's evidence. *United States v. Zolp*, 659 F.Supp. 692, 706 (D.N.J.1987) (citations omitted). Moreover, in evaluating a request for a bill of particulars the court must examine the information already provided by the government through discovery or by other means. *Eisenberg*, 773 F.Supp. at 689 (citations omitted); *United States v. Fischbach and Moore, Inc.*, 576 F.Supp. 1384, 1389 (W.D.Pa.1983), *citing United States v. Kenny*, 462 F.2d 1205, 1212 (3d Cir.1972).

■ Defendants' Rule 7(f) requests may be disposed of in short order. Parlavecchio's request for a bill of particulars on the obstruction of justice count is denied because, as set forth above, the Indictment itself sets forth sufficient factual information to apprise him of the nature of the charges against him. Beyond the Indictment itself, the government has provided further information in response to Parlavecchio's requests, apprising him of its specific allegation that "Parlavecchio telephoned [grand jury witness Louis] Giordano, prior to his testimony before the grand jury, and in effect told Giordano to falsely present the facts when he was called to testify." (Opp.Br. pp. 34–35)

Clearly, denial of Parlavecchio's motion will not lead to his "inability to adequately prepare his case, to avoid surprise at trial, or to avoid the later risk of double jeopardy." *Addonizio*, 451 F.2d at 64.

 Defendants' motion for a bill of particulars on the money laundering counts of the Indictment is completely without merit. The Indictment sets forth, in detail, allegations that defendants caused transfers of rent checks from the Board to specified bank accounts held by Mutual and then caused transfers from those Mutual accounts to specified accounts held by each defendant. It is the latter set of transfers that constitutes the money laundering charges, and the indictment provides a partial list of individual check numbers with dates and amounts identifying the funds that allegedly flowed from Mutual's account to the accounts of the defendants. This is clearly sufficient detail. *See United States v. Belkin*, CR No. 93-240, 1993 WL 505652, *5 (E.D.Pa.) (refusing to grant bill of particulars where "money laundering counts specif[ied] the deposit dates and amounts of the checks that are the subject of those counts"). To require the government to trace the proceeds of specific Board funds through Mutual to the individual defendants would sharply contravene the purpose and intended scope of bills of particulars.

## IV. Government's Motion for Reciprocal Discovery

The government moves under Federal Rule of Criminal Procedure 16(b)(1)(A), (B) and (C) for reciprocal discovery which it alleges defendants have refused to grant despite proper requests. As defendants have not challenged the government's motion, the Court assumes defendants do not object to the government's right to request the discovery at issue. Accordingly, the Court orders defendants to respond to the government's requests within thirty days, either with the requested documents or testimony or with specific objections and the grounds therefor.

## CONCLUSION

For the foregoing reasons, the Court will grant defendants' motion to dismiss Count 28

of the Indictment. The Court will deny defendants' motion for a bill of particulars on Counts 29–40 of the Indictment, as well as defendant Parlavecchio's motion to dismiss Count 41 of the Indictment or, in the alternative, for a bill of particulars on that count. The Court will grant the government's motion for reciprocal discovery and will order defendants to deliver to the government responses or objections to the government's outstanding discovery requests within thirty days of the date of the attached Order.

### ORDER

In accordance with the Court's Opinion filed herewith,

It is on this 20th day of October, 1995,

ORDERED that defendants' motion to dismiss Count 28 of the Indictment is granted; and it is further

ORDERED that defendants' motion for a bill of particulars on Counts 29–40 of the Indictment is denied; and it is further

ORDERED that defendant Parlavecchio's motion to dismiss Count 41 of the Indictment or, in the alternative, for a bill of particulars on that count is denied; and it is further

ORDERED that the government's motion for reciprocal discovery is granted; and it is further

ORDERED that defendants deliver to the government responses or objections to the government's outstanding discovery requests within thirty (30) days of the date of this Order.